## THE STATE v. M. M. SHARPLESS, Appellant.

**Division Two, May 19, 1908.**

1. **INFORMATION: Forgery: "Interest in Real Estate."** Where the information charged that defendant "feloniously caused and procured to be falsely made, forged and counterfeited a certain deed of release, purporting to be the act and deed of one W. C. Moore, as executor of Thos. W. Mallory, deceased, by which all the right and interest of said W. C. Moore, as executor of Thos. W. Mallory, as aforesaid in and to the lands hereinafter described in the deed of release hereinafter set forth, purports to be transferred, conveyed, released and quit-claimed to James P. Grove," followed by the deed set out in full, it sufficiently alleged that a right or interest in real property was purported to be transferred by the forged deed of release, in substantial compliance with the statute.

2. ——: ——: **Inconsistent Recitals in Deed.** Where the forged deed set out in the information contains recitals that are inconsistent with and repugnant to each other, they are not to be held to be inconsistent with and repugnant to the consistent allegations charging the offense of forgery, nor as being true, nor is the State bound to accept them as being true or genuine; but if the charge is that the deed was a forgery, the setting of it out is to be held to have been done for the purpose of identifying the instrument charged to have been forged.

3. ——: **Amendment.** Where the offense was substantially charged without the amendment, no error was committed by the court in permitting the amendment.

4. **FORGERY: Deed as Evidence.** To be admissible in evidence the instrument charged to have been forged need not be a perfect deed, but if it is of apparent legal efficacy to injure another, it is admissible in evidence. Where a deed of release on its face not only purports to convey the interest of the executor of Thos. W. Mallory, and to release the land from

a deed of trust, but also to express the assurance of Mallory's executor that Mallory's heirs have no interest in the land, it is admissible in evidence, however imperfect may be its recitals.

5. ——: **Evidence: Papers Taken From Defendant: Compulsory Self-Crimination.**    Papers taken from the defendant's pockets at the time of his arrest and kept by the police until the day of the trial, are not incompetent evidence, and their admission does not violate defendant's rights as declared by the constitutional provision which says that "no person shall be compelled to testify against himself;" and even though they were obtained by unlawful search and seizure, that did not render them incompetent evidence.

6. ——: **Variance: Deed: Acknowledgment.**    Where the information charged the forgery of a deed and set it out in full to the signature, but contained no allegation as to the acknowledgment, the fact that the deed, when offered in evidence, was seen to contain a certificate of acknowledgment, did not constitute a variance between the information and proof.

7. **ELECTION.**    Where defendant was convicted on only one count, it is not error to refuse to compel the State to elect upon which count of the information it would prosecute.

8. **CAUTIONARY INSTRUCTION: Statements and Admissions of Defendant.**    Where the court gave a fair, full and liberal instruction to the jury concerning the credibility of the witnesses, telling the jury among other things that they must consider the opportunity the witness had to be informed of the matters concerning which he testified, a failure by the court to give a cautionary instruction concerning statements and admissions made by defendant, when no such instruction was requested by him, is not reversible error.

Appeal from Jackson Criminal Court.—*Hon. Wm. H. Wallace,* Judge.

AFFIRMED.

*Allen Stallings* and *Robert A. Moore* for appellant.

(1)    Certain papers were taken from the person of the accused after he was arrested and the court permitted the State to introduce them in evidence against him.    When the detective was identifying the papers he

said he took them from the defendant after he arrested him; the defendant objected to their introduction for the reason that they were obtained by unlawful search and seizure and as the court was apprised of that fact at the time, the objection should have been sustained. State v. Davis, 108 Mo. 666; State ex rel. v. Hardware Co., 109 Mo. 118; State v. Faulkner, 175 Mo. 546. (2) The following documents and records should not have been admitted in evidence: (a) The record of a deed of trust given by T. W. Mallory and wife to S. M. Locke, trustee, for the use of W. C. Moore, executor of the estate of T. W. Mallory, deceased. The information mentions a deed of trust given Thomas W. Mallory, Jr., and mentions W. C. Moore as executor of Thos. W. Mallory, Sr., deceased, the record offered shows an instrument signed by T. W. Mallory and Sallie Mallory, a variance in the names of the grantor, and W. C. Moore is described as executor of the estate of T. W. Mallory, Sr., deceased, a variance in the party for whose use the instrument was given. The record offered in evidence covered the southeast quarter of section 22 in township 38 of range 27 in St. Clair county, while the information describes the land as the southeast quarter of the southeast quarter of section 15 and the northeast quarter of the northeast quarter of section 22 in township 38 of range 27, in St. Clair county. The land described in the record is 160 acres while that described in the information is only 80 acres and is situated one fourth of a mile at its nearest point, from that in the record. (b) The note that accompanied the deed of release was not admissible for any purpose; it was not shown to be a forgery, and was not brought to the knowledge of the defendant in any way that it could be admissible against him. (c) A letter written to J. P. Grove by Leslie Rodgers, of which a copy of a copy was admitted in evidence, had no right in evidence, it was not shown that the defendant had any knowledge of it in any shape or form. In addition to

the error of admitting the copy of a. copy, it was *res inter alios acta,* and should not have been admitted. State v. Minton, 116 Mo. 605; State v. Lentz, 184 Mo. 223; Wharton's Crim. Ev. (9 Ed.), sec. 202. (d) The deed of release which was mailed to the recorder of deeds at Osceola was not admissible in evidence: First. It did not possess any apparent legal efficacy. Where an instrument is so palpable and absolutely invalid that it can under no circumstances be proof in a legal proceeding, then falsely to make it is not forgery. Wharton's Criminal Law (9 Ed.), sec. 696; Com. v. Dallinger, 118 Mass. 439; Brown v. People, 86 Ill. 239; Henry v. State, 35 Ohio St. 128; John v. State, 23 Wis. 504; Rood v. State, 5 Neb. 174; Keeler v. State, 15 Tex. App. 112; Howell v. State, 37 Tex. App. 591; State v. Davis, 53 Iowa 252; People v. Head, 1 Idaho 531; Dunning v. Brown, 3 Col. 571; State v. Cordray, 200 Mo. 29. The instrument showed on its face that it did not convey any land nor any interest therein, because the grantor had no interest to convey. Second. The instrument was made by an executor for the purpose of releasing a deed of trust without receiving payment of the note which the deed of trust was given to secure and was such an instrument that an executor had no right to make. Sec. 4358, R. S. 1899. Third. Before the instrument was admissible in evidence it was incumbent on the State to show that there was of record a deed of trust upon which the deed of release would operate. A deed of release to release a deed of trust would be absolutely worthless to any one, unless there was a deed of trust which some one was interested in having released; it could not possibly defraud any one else. Com. v. Shissler, 9 Phila. 587; State v. Rowlen, 114 Mo. 626; State v. Humphreys, 29 Tenn. 442; People v. Wright, 9 Wend. 409; Dixon v. State, 81 Ala. 61; Williams v. State, 90 Ala. 649. Fourth. There was a fatal variance between the instrument offered in evidence and the information. The

information did not set out the acknowledgment; while the authorities hold that it is not necessary to set out an acknowledgment in charging the forgery of a deed it is for the reason that it is presumed to be properly acknowledged. State v. Fisher, 65 Mo. 437. Where the indictment purports to set out the forged instrument according to its tenor, and *in haec verba,* any material variance between the instrument forged and the copy set out in the indictment is fatal. Haslip v. State, 10 Neb. 590; State v. Fleshman, 40 W. Va. 726; Com. v. Lawless, 101 Mass. 32; State v. Clark, 23 N. H. 429; Brown v. People, 66 Ill. 344; Hart v. State, 20 Ohio 49; State v. Blanchard, 74 Iowa 628; Shirley v. State, 1 Oregon 270; State v. Fay, 65 Mo. 490. The instrument was not an instrument that was the subject of forgery; it should not have been admitted in evidence. Abbott v. Rose, 62 Me. 194; Dixon v. State, 81 Ala. 61; Shannon v. State, 109 Ind. 407; Anderson v. State, 20 Tex. App. 595; Terry v. Com., 87 Va. 672; State v. Leonard, 171 Mo. 622; State v. Cordray, 200 Mo. 29.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1) The information charges the offense in the language of the statute, and sets forth the instrument according to its tenor, and is sufficient. R. S. 1899, sec. 1994; State v. Fisher, 65 Mo. 437; State v. Tobie, 141 Mo. 547; State v. Rucker, 93 Mo. 88; State v. Rowlen, 114 Mo. 626. And the deed of release, upon its face, would have the effect to defraud those who might act upon it as genuine. 13 Am. and Eng. Ency. Law (2 Ed.), 1082. (2) The State need not elect on which count of an indictment it will proceed to trial, where the several counts relate to the same transaction. State v. Schmidt, 137 Mo. 266; State v. Houx, 109 Mo. 654; State v. Pratt, 98 Mo. 482. (3) The documents and letters taken from the person of defendant at the time of his arrest were properly admitted in evidence. The

law is well settled that stolen goods, burglar's tools, forger's implements and documents, counterfeit bills, lottery tickets, and the like, may be used in evidence against defendant in a criminal prosecution, even though illegally obtained. Sections 11 and 22 of article 2 of our State Constitution do not forbid use of such evidence so obtained. The constitutional restriction is upon the powers of government, and is not intended as a restraint upon the unauthorized acts of individuals. Such letters and documents are not in the nature of admissions made under duress, nor are they evidence furnished by defendant himself under compulsion. They are not the admissions nor evidence of defendant in any sense. State v. Pomeroy, 130 Mo. 489. And said documents and letters were competent to show intent. State v. Stark, 202 Mo. 210. (4) The release deed, on which the information is founded, possesses apparent legal efficacy, and it was properly admitted in evidence. On its face it not only purports to convey the interest of the executor and to release the land from a deed of trust, but it also purports to express the assurance of W. C. Moore, executor of the estate of Thos. W. Mallory, Sr., deceased, that the heirs of said Thos. W. Mallory, Sr., have "no interest whatsoever" in the land it describes, and it might, for that reason, have tended to prejudice the rights of the said heirs, and for that, as well as for other reasons, be the subject of forgery. (a) It is not necessary that an instrument shall have actual legal efficacy in order to be the subject of forgery; it is sufficient that, if genuine, it might apparently have such efficacy, or serve as the foundation of a legal liability, or be such that the forgery of it might tend to the prejudice of another's right. State v. Eads, 68 Mo. 150; People v. Krummer, 4 Park C. R. 217; 24 L. R. A. 33 note; 22 Am. Dec. 306, note; Barnum v. State, 15 Ohio 717. (b) A deed, valid on its face, may be the subject of forgery, though the pretended grantor is dead, or has no title. Henderson v. State, 14 Tex. 503.

(c)   To be the subject of forgery it is not necessary that the person by whom an instrument purports to be made should have the legal capacity to make it.   State v. Eads, 68 Mo. 150.   (d)   A deed, to be valid as between the parties, need not be acknowledged or recorded, and it is not necessary to charge that the acknowledgment was a forgery, nor to prove the acknowledgment, though proof that the acknowledgment was a forgery would be admissible as bearing on the main fact that the deed itself was forged.   Wilson v. Kimmell, 109 Mo. 264; State v. Pyscher, 179 Mo. 140.

FOX, P. J.—This cause is now pending in this court upon appeal by the defendant from a judgment of conviction in the criminal court of Jackson county, convicting him of the offense of forgery.   On the 18th day of November, 1905, at the September term, 1905, of the criminal court of said county the prosecuting attorney of said county filed an information against the defendant, which was duly verified, charging him in two counts with forgery in the first degree.   The second count of the information, the one upon which defendant was convicted, omitting formal parts, charged that:

"On the 6th day of November, 1905, one M. M. Sharpless, whose Christian name in full is to said prosecuting attorney unknown, did then and there unlawfully and feloniously cause and procure to be falsely made, forged and counterfeited a certain deed of release, purporting to be the act and deed of one W. C. Moore, as executor of the estate of one Thos. W. Mallory, Sr., deceased, by which all the right and interest of the said W. C. Moore, as executor of Thos. W. Mallory, Sr., as aforesaid (in and to the lands hereinafter described in the deed of release hereinafter set forth) purports to be transferred, conveyed, released and quit-claimed to one James P. Grove, which said false, forged and counterfeited deed of release is as follows, that is to say:

" 'DEED OF RELEASE.

" 'Whereas, Thos. W. Mallory, Jr., by deed of trust, dated July 27th, 1900, did convey to S. M. Locke as trustee for the use of me, W. C. Moore, as executor of the estate of Thos. W. Mallory, Sr., deceased, all his undivided interest in the property hereinafter described, together with other lands described in said deed of trust to secure the payment of the debt described therein, consisting of a note payable to Thos. W. Mallory, Sr., for four hundred dollars, with interest at the rate of eight per cent. per annum, dated November 25th, 1895; and

" 'Whereas, James P. Grove has purchased the hereinafter described land from Thos. W. Mallory, Sr., by good and sufficient warranty deed prior to said deed of trust, and at his death, leaving no interest whatsoever to any of his heirs, including Thos. W. Mallory, Jr., in the following tract or parcel of land: Now,

" 'Therefore, Know all men by these presents, That I, W. C. Moore, executor of the estate of Thos. W. Mallory, Sr., deceased, in consideration of the premises, and one dollar in hand paid, the receipt of which is hereby acknowledged, do release and forever quitclaim unto the said James P. Grove, and unto his heirs and assigns all of the following described tract or parcel of land described in the above described deed of trust, located in the county of St. Clair and State of Missouri, described as follows, to-wit: The southeast quarter of the southeast quarter of section fifteen (15) and the northeast quarter of the northeast quarter of section twenty-two (22), in township thirty-eight (38) of range twenty-seven (27), containing in all eighty acres, but this deed shall in no way release any other lands in said deed of trust, but release said deed of trust to the above described land only.

" 'Witness my hand and seal this 6th day of November, 1906.

" 'W. C. MOORE, Executor. (Seal.)'

"With intent then and there unlawfully and feloniously to defraud; against the peace and dignity of the State."

On November 20, 1905, defendant was arraigned and entered his plea of not guilty. The case was continued from term to term, until the 29th day of May, 1907, at the April term of said court, the court having overruled defendant's motion to discharge defendant because of delay in bringing him to trial, defendant was put upon his trial.

The evidence on the part of the State tended to prove that during the greater part of the year 1904, defendant resided at Mexico, Missouri, where he was engaged in the law business. While there he resided across the street from Fanny Bell Moore, widow of W. C. Moore, deceased, with whom he became acquainted and from whom he learned that she was interested as heir of her father, Thomas W. Mallory, Sr., in certain lands in St. Clair county, Missouri, being the same land described in the information. During the months of August, September, October and November, 1905, defendant made his home at a hotel at 912 Oak street, Kansas City, Missouri. In August, 1905, the Osceola Abstract and Loan Company, Osceola, Mo., received a letter, bearing date Kansas City, Mo., Aug. 12, 1905, signed James P. Grove, 912 Oak street, Kansas City, Mo., inquiring as to valuation of said land, and cost of abstract of title thereto, which letter was duly answered to said address. A few days later, under date of August 17, 1905, the recorder of deeds of St. Clair county, Missouri, received a letter purporting to be from James P. Grove, 912 Oak street, Kansas City, Mo., enclosing for record in the land records of said county, a warranty deed of date November 12, 1896, purporting to have been executed by Thos. W. Mallory and conveying said land to James P. Grove, which deed was duly re-

corded. The landlady at No. 912 Oak street, Kansas City, testified that she never knew a person named James P. Grove and that no person by that name in 1905, or at any other time, stopped at her house, and that her hotel register contained no such name. On the 1st day of November, 1905, defendant arrived at Lowry City, in St. Clair county, Missouri, and gave his name at the Lowry City Hotel as Henry Stanton of Kansas City. He called upon a real estate agent named Wears, gave his name as Stanton and said he was attorney for James P. Grove of Kansas City, and had come to close up the sale of Mr. Grove's land, referring to the land described in the information. Shortly before that day Mr. Wears had had correspondence with "James P. Grove" about the land, and had a prospective purchaser for it in the person of Mr. Lucas of Osceola. Defendant brought with him a deed by Grove, conveying said land, but Mr. Lucas would not pay for the land until a deed of trust, being the same described in the release deed as set out in the information, was released of record. Defendant did not meet Mr. Lucas personally, but talked with him over the telephone as to how the release of the deed of trust after the closing of the trade could be brought about. Defendant said he would go back home and have Grove fix it up. The next day Wears received a letter from "H. Stanton," written on letter-head of Lowry City Hotel, instructing him to write full particulars to Grove, giving description of note and recording pages, and he (Stanton) would advise Grove to settle up the matter. Wears, under date of November 2, 1905, wrote a letter to Grove, giving, from the land records, description of the deed of trust and note secured by it, and suggesting that a release deed be secured from Mr. Moore and that papers be sent through the bank. While defendant was in Lowry City on this occasion, or near that time, he called on Mr. Good, a banker there, at the bank office, introduced himself as Stanton, an attorney representing Mr.

Grove, and inquired about the value of this land. Under date of "Kansas City, November 11, 1905," the recorder of deeds of St. Clair county received a letter purporting to have been written by W. C. Moore, enclosing the deed of release copied in the information and the fee for recording same, with a note answering the general description of the note described in the deed of release, and requesting the recorder to cancel the deed of trust and send the note, uncancelled, back to W. C. Moore, general delivery, Kansas City, Mo. The recorder did not record the release deed for the reason that he noticed, by reference to the records, that the note described in the deed of trust, which the release deed purported to release, was described as bearing a revenue stamp, but the note enclosed in said letter bore no stamp, and for the further reason that he had been informed that W. C. Moore was dead. The recorder consulted the prosecuting attorney of St. Clair county, and, upon the advice of the prosecuting attorney, wrote a letter under date November 15, 1905, to W. C. Moore, general delivery, Kansas City, Mo., calling attention to clerical error in dates of deed and acknowledgment. The prosecuting attorney of Jackson county, Mr. Kimbrell, before the mailing of said letter by the recorder, had been notified that it would be sent, and by his request the police department of Kansas City detailed a man to arrest whoever called for the mail of W. C. Moore. Defendant appeared at the post-office, called for the mail of W. C. Moore and received the letter from the recorder, opened it and was reading it when he was arrested by the officer. On defendant's person, when arrested, were found the following other papers: Warranty deed from James P. Grove, grantee blank, conveying said land, and being the same taken by defendant to Lowry City; letter introduced in evidence as "Exhibit O;" copy of letter marked "Exhibit Q;" letter dated October 21, 1905, from Wears to Grove; three envelopes addressed by Wears to Mr. J.

P. Grove, 912 Oak St., Kansas City, Mo., stamps dated October 21, 1905, October 29, 1905, November 3, 1905, respectively, enclosing letters from Wears to J. P. Grove. When first arrested defendant said that his name was Moore, but later gave his true name, Sharpless, and said he had been authorized to get Moore's mail.

It was also shown by the testimony of Fanny Bell Moore that her husband, W. C. Moore, died in the year 1903; that the signature to the said release deed purporting to be the signature of her said husband as executor, was not genuine, and that the signature to warranty deed to James P. Grove, purporting to be the signature of her father, Thomas W. Mallory, was not genuine. Her testimony was corroborated by that of her son, as to the signature of W. C. Moore to the release deed.

The State also introduced record proof of the appointment and qualification of W. C. Moore as executor of the estate of Thomas W. Mallory, deceased, and inventory of the estate, including description of note referred to in said release deed and description of said real estate. The State also introduced in evidence the deed of trust referred to in deed of release set out in the information.

During the progress of the trial, for the purpose of making more clear the exact land mentioned in the information, the State, over objections of defendant, was permitted to amend each count of the information by interlining the words, "in and to the lands hereinafter described in the deed of release hereinafter set forth," enclosed in parenthesis as above indicated.

At the close of the State's evidence defendant requested an instruction in the nature of a demurrer, which was by the court denied. The defendant made a verbal request that the State be required to elect upon which count of the information it would proceed, which request being denied the defendant excepted.

Defendant's evidence tended to prove that there was such a man as James P. Grove, who had lived in Illinois, and was a sort of a lawyer or real estate man. One witness testified that he thought, but was not sure, that he had seen Grove once, for a few moments in defendant's office at Kansas City in the fall of 1905. Stella M. Bowles, a young girl, testified by deposition that in the summer and autumn of 1905 she was stenographer for James P. Grove and John Stanley, real estate agents, at Omaha, Nebraska; that being her first experience as stenographer. She testified that Grove was gone from Omaha about two weeks in the first half of August, 1905, and that during his absence letters were received at the office in Omaha from Grove written from Kansas City and Wichita. That when Grove returned to Omaha he brought with him some papers and blank deeds, and he had her fill in the blanks of some of them, including notarial blanks, on the typewriter, he signing his name to some and other names to others. She signed the name "Nellie H. Bell" as notary public, to some of the deeds, which purported to convey lands in Texas, Kansas and Missouri. She further testified that about the last of October, 1905, more blank deeds were, in like manner filled and signed, among which was a deed to land in St. Clair county, Missouri. Grove then went away, returning at the end of about two weeks with John Stanley. Grove then dictated to her a deed of release; while he was dictating having a letter in his hand from a man named Wears. When she had finished the deed of release, Stanley took said letter to a table, put the deed of release over it and copied Moore's name out of the letter. She filled in the notary's certificate, dated the notarial blank at Kansas City, Jackson county, Missouri, and signed it "Nellie H. Bell, notary public." She testified that the copy of release deed set out in the information was an exact copy of the deed she had thus written. She testified to having written from Stanley's dictation letters

corresponding exactly to the letter which was received by the recorder of deeds at Osceola with the release deed. At the request of Stanley, she said, she wrote the signature to the letter on the typewriter, except the letter ''M'' in the word ''Moore,'' for which she left a blank space, and which he filled by making an ''M'' with a pen. In similar manner she accounted for a copy of said letter. This witness further testified that after exchanging a dollar bill for a silver dollar which Stanley had given her a few days before, that he (Stanley) took the letter to the county recorder, the stamped envelope, the dollar bill and the deed of release and put them in an envelope, addressed to the county recorder at Osceola, Missouri. She further testified that Stanley had her address an envelope to W. C. Moore, general delivery, Kansas City, Mo. This witness further testified that she saw Stanley again the same day the release deed was written; that the next day he went away and she had not seen him since. The Thursday following Grove dictated a letter to Stanley at Kansas City, and on the following Saturday he came in and paid her $10, telling her that he would not need her any more and that if anybody asked her what he had done not to say anything; that he then gathered up his papers, put them in his grip and left. That she had not seen him since and had no knowledge of the whereabouts of either Stanley or Grove. The State was not represented at the taking of this deposition.

Charles F. Clark testified by deposition that he was a farmer and resided in Illinois; that on the evening of November 15, 1905, he was at the office in Kansas City where defendant had his desk and overheard a conversation between defendant and a man who introduced himself to defendant as W. C. Moore, in which Moore, giving defendant the copy of the letter to the recorder, told him about releasing land of a mortgage, and in which Moore instructed defendant to get Moore's mail at postoffice in Kansas City and open it, as he (Moore)

was going away that night. The State was not represented at the taking of this deposition.

Defendant testified in his own behalf that in 1904 he lived at Mexico, Missouri, and in 1905 at Omaha, Nebraska, and Kansas City, Missouri. That he knew Mrs. Moore at Mexico and learned from her that she was interested in land in St. Clair county, Missouri, as an heir of her father, Mr. Mallory. He testified that he knew James P. Grove in Illinois; that Mr. Grove having come to Mexico and inquired about cheap land, defendant had referred him to Mrs. Moore, but did not know whether Grove saw Mrs. Moore. He said Grove visited him at Kansas City in August, and stopped one night at 912 Oak street. Grove came to his office about the latter part of October, 1905, to employ defendant to go to St. Clair county to close a trade for land. Defendant admitted that he went to Lowry City under the name of Stanton, and explained his action by saying that Grove said he had been carrying on communications with Mr. Wears at Lowry City through a man named Stanton and had told Wears that Stanton would be there, and he was afraid if anybody but Stanton talked to Wears he might lose the deal. For that reason defendant said he took the name of Stanton. He said Grove telegraphed Wears that Stanton was coming. His account of the transactions at Lowry City corresponded in the main with the testimony of Wears and others introduced by the State. Defendant further testified that on returning to Kansas City a stranger, introducing himself as W. C. Moore, executor of Thomas Mallory's estate, called at his office, explained about having executed and sent for record a release of a mortgage on St. Clair county land some time before and was expecting it by mail every day; that he was in a hurry to get home and as Grove had told him to leave the deed of release with the defendant as his attorney, when it came, Moore requested defendant to call for his mail on the following morning and if he received a let-

ter from the recorder at Osceola for him to open it and keep it for Grove. That Moore gave defendant a letter from Wears to Grove and copy of letter sent to recorder with release deed; also other Grove letters found on him when arrested. Defendant identified a deed offered in evidence by the State as the deed executed by Grove in blank, which he had taken to Lowry City. Defendant denied that on the occasion of his arrest he gave his name to the officer as Moore. He said he had never seen Moore, except for about ten minutes at the time referred to, at which interview Moore authorized him to get his mail, and that he did not know where Moore and Grove were, though he had made efforts to find them. On cross-examination defendant admitted that when he went to Lowry City he knew the land he was trying to dispose of was the same land Mrs. Moore had talked with him about in Mexico, Missouri, and that when the stranger giving his name as "W. C. Moore," executor of the estate of Thomas Mallory, deceased, called at his office in Kansas City he knew that Mrs. Moore's husband was dead, but stated that he did not know his initials were W. C.

In rebuttal the State recalled T. S. Wears, who testified that he had never met James P. Grove, and that he had never heard from him that his attorney, Stanton, would be at Lowry City, except the telegram which was not delivered until after defendant, under the name of Stanton, had arrived there. The State also introduced evidence to show that there had been no notary public in Jackson county, Missouri, named Nellie H. Bell.

At the close of all the evidence defendant requested the court to require the State to elect upon which count of the information it would try the defendant, which request the court denied.

The cause being submitted to the jury upon the evidence and instructions of the court, the jury returned a verdict finding the defendant guilty as charged in the

second count of the information and assessed his punishment at ten years' imprisonment in the penitentiary. Timely motions for a new trial and in arrest of the judgment were filed and by the court overruled. Sentence and judgment were duly entered of record in conformity to the verdict returned by the jury, and from this judgment defendant prosecutes his appeal, and the record is now before us for review.

## OPINION.

The record in this cause discloses numerous complaints of error as a basis for the reversal of the judgment rendered in the lower court. We will give the assignments of error such attention as in our opinion the importance of the questions require.

### I.

The sufficiency of the information is challenged by learned counsel for appellant. Directing our attention to this proposition we find that the second count of the information was predicated upon the provisions of section 1994, Revised Statutes 1899, which provides, so far as applicable to this question, that "every person who shall forge, counterfeit or falsely alter, or cause or procure to be forged, counterfeited or falsely altered: First, any will of real or personal property, or any deed or other instrument being or purporting to be the act of another, by which any right or interest in real property shall be or purport to be transferred, or in any way changed or affected, . . . . with intent to defraud, shall, on conviction, be adjudged guilty of forgery in the first degree."

1st. It is insisted that the information fails to allege, in accordance with the provisions of the statute, that the rights purporting to be transferred were rights in or concerning real property. In our opinion there is no merit in this insistence. The information charges

that the defendant "feloniously caused and procured to be falsely made, forged and counterfeited a certain deed of release, purporting to be the act and deed of one W. C. Moore, as executor of the estate of one Thos. W. Mallory, Sr., deceased, by which all the right and interest of the said W. C. Moore, as executor of Thos. W. Mallory, Sr., as aforesaid in and to the lands hereinafter described in the deed of release hereinafter set forth, purports to be transferred, conveyed, released and quit-claimed to one James P. Grove." Then follows a literal copy of the deed of release. Upon this proposition the allegations in the information are susceptible of but one construction, and that is, by this deed of release all the right, title and interest of said W. C. Moore as executor of the estate of said Thos. W. Mallory, Sr., deceased, was purported to be transferred, conveyed, released and quit-claimed to Grove in the real estate described in said deed of release. The information sufficiently charges that by the forged instrument a right or interest in real property was purported to be transferred, in substantial compliance with the provisions of the statute.

2nd. It is earnestly urged by learned counsel that the allegations in the information are so inconsistent and repugnant to each other that they fail to charge the commission of any offense under the provisions of the statute. This insistence is predicated, not upon the allegations employed by the prosecuting officer in charging the offense, but upon recitations contained in the deed of release, which is set forth in the information. It must not be overlooked that the deed of release, which is the foundation of this prosecution, is charged to have been a forged instrument, which was procured or caused to be procured by the defendant, and by no means are the recitals in such forged instrument to be construed as being true, nor is the State in this prosecution bound to accept such recitals as being

true and genuine. The deed of release in this informa-
tion is simply set forth to designate the instrument
which is charged to have been forged, and by which the
fraud was intended to be perpetrated. In our opinion,
the information as disclosed by the record, contains
every essential element of the offense defined by the
provisions of section 1994, and is in substantial com-
pliance with the rulings of this court applicable to this
subject upon indictments and informations substan-
tially in the same form. [State v. Tobie, 141 Mo. 547;
State v. Fisher, 65 Mo. 437; State v. Gullette, 121 Mo.
447; 2 Greenl. Ev. (15 Ed.), sec. 104; Kelley's Crim.
Law and Prac., sec. 768; State v. Scott, 48 Mo. 422;
State v. Comfort, 5 Mo. 357; State v. Rucker, 93 Mo. 88;
State v. Rowlen, 114 Mo. 626.]

## II.

It is insisted that the court committed error in the
admission of the deed of release as set out in the infor-
mation. This insistence is predicated upon the theory
that the recitations in the deed of release show its in-
efficacy. We are unwilling to give our assent to this
insistence. This deed of release on its face not only
purports to convey the interest of the executor, and to
release the land from a deed of trust, but it also pur-
ports to express the assurance of W. C. Moore, executor
of the estate of Thos. W. Mallory, Sr., deceased, that
the heirs of said Thos. W. Mallory have no interest in
the land it describes. Manifestly, such recitals had a
tendency to prejudice the rights of the heirs of Thos.
W. Mallory, Sr.

It is fundamental that one of the essential elements
of this crime is the intent to defraud, and it is only es-
sential that the instrument to be the subject of forgery
should be of some apparent legal efficacy for injury to
another. On the other hand, instruments which upon
their face are utterly valueless and have no binding
force or effect for any purpose of harm, liability to in-

jury to any one, cannot be the subject of forgery.   This rule is fully recognized both at common law and in the highest courts of the several States of the Union. [State v. Cordray, 200 Mo. 29; Colson v. Com., 110 Ky. 233; King v. State, 43 Fla. 1. c. 218, 219; 19 Cyc. Law and Prac., 1370, and cases cited in note 94.]

In People v. Tomlinson, 35 Cal. 503, the object and purposes of the statute against forgeries were very clearly and tersely stated.   It was said:  "The purpose of the statute against forgeries is to protect society against fabrication, falsification, and the uttering, publishing, and passing of forged instruments, which, if genuine, would establish or defeat some claim, impose some duty, or create some liability, or work some prejudice in law to another in his rights of person or property.   Hence, without much conflict, if any, it has been held from the outset that the indictment must show that the instrument in question can be made available in law to work the intended fraud or injury."

The law upon the subject of forgery very properly undertakes to safeguard the rights of the citizen in respect to his property against imposition and fraud resulting from the use of forged instruments.   Applying the tests and rules of law as heretofore indicated to the deed of release charged to have been forged in the case at bar, we see no escape from the conclusion that such deed upon its face was of sufficient apparent legal efficacy to be the subject of forgery, and it was not essential to embrace the additional charge in the information that the recitation in the deed of release of the conveyance from Thos. W. Mallory, Sr., deceased, to James P. Grove, was a forgery.   The deed of release upon its face shows that it purports to release the rights of certain parties in certain described lands, and further purports to express the assurance of W. C. Moore, executor of the estate of Thos. W. Mallory, Sr., deceased, that the heirs of Thos. W. Mallory, deceased, have no interest whatsoever in the land therein de-

scribed.    That such recitations have some apparent
legal efficacy for injury to another, or at least, as was
said in the California case, would "work some preju-
dice in law to another in his rights of person or prop-
erty," in our opinion is too plain for further discus-
sion.

## III.

Error is assigned upon the action of the court in
permitting an amendment to the information during
the progress of the trial.    This amendment consisted
of inserting in the information these words: "In and
to the lands hereinafter described in the deed of re-
lease hereinafter set forth."    The addition of these
words and the place they are employed in the informa-
tion are fully pointed out in the statement of this cause.

Section 2481, Revised Statutes 1899, substantially
provides that informations may be amended in matter
of form or substance at any time by leave of court be-
fore the trial, and may be amended during the progress
of the trial in matters of form and variance, at the
discretion of the court, when the same can be done
without prejudice to the substantial rights of the de-
fendant upon the merits.    An examination of the infor-
mation in this case makes it manifest that the offense
was substantially charged without the amendment.
The amendment was clearly one of mere form in which
the pleader undertook to more definitely point out the
land described in the deed of release.    There was in fact
no necessity for the amendment, and in no way could
it possibly have prejudiced any of the substantial rights
of the defendant upon the merits; hence the ruling
upon this contention must be adverse to the appellant.
[See State v. Standifer, 209 Mo. 264.]

## IV.

It is next earnestly insisted by counsel for appel-
lant that certain papers, taken from the person of the

accused after he was arrested by an officer connected with the police department of Kansas City, were erroneously admitted in evidence on the part of the State. Mr. McAnnany arrested the defendant and stated on the witness stand that he took the papers offered in evidence from the defendant after he arrested him. At the time of offering of these documents in evidence, counsel for defendant objected to their introduction for the reason that they were obtained in unlawful search and seizure, and it is now insisted that as they made known that fact to the court, the objections should have been sustained to their introduction, and that the admission of them constituted reversible error. The point is made and it is very strongly presented that the admission of these documents was a violation of the rights guaranteed to the defendant under the provisions of sections 4 and 5 of the Amendments to the Federal Constitution and sections 11 and 23 of our Bill of Rights, which provides that "no person shall be compelled to testify against himself in a criminal case." The principle involved in this proposition was in judgment before this court in State v. Pomeroy, 130 Mo. 489. In that case certain lottery tickets were taken from the person of the defendant and upon the trial of defendant for establishing a lottery in this State were offered and admitted in evidence. The same objections were interposed in that case as in the case at bar to the introduction of the documents taken from this defendant. This court held that the authorities did not sustain the position of counsel for appellant upon this proposition, and Judge SHERWOOD, in treating this question, said: "In Massachusetts the provisions of the fourteenth article of the Bill of Rights of that State were similar to section 11 of our own Constitution, and the objection of the defendant's counsel was like that made in the case at bar, and it was also urged in the case referred to, as another objection, that the seizure of the lottery tickets and materials for a lottery, for the purpose of using

them as evidence against defendant, was virtually compelling him to furnish evidence against himself, in violation of another article in the declaration of rights. But the court, in answering these objections, said: 'In cases of the seizure of stolen goods on search warrants, the goods have almost in all cases been given in evidence against the offender, and no one, I apprehend, ever supposed that a seizure for that purpose was a violation of the declaration of rights; and in this respect there is ·no distinction between the seizure of stolen goods and the seizure of lottery tickets. . . . Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to de-termine that question. This point was decided in the cases of Legatt v. Tollervey, 14 East 302, and Jordan v. Lewis, 14 East 306, note; and we are entirely satisfied that the principle on which these cases were decided is sound and well established.' [Com. v. Dana, 2 Metc. 329. To the same effect see 1 Greenl. Evid. (14 Ed.), sec. 254a; State v. Flynn, 36 N. H. 64; Siebert v. People, 143 Ill. 571; Gindrat v. People, 138 Ill. 103.] In Gindrat's case, Mr. Justice BAKER, when contrasting Boyd v. United States, 116 U. S. 616, on which defendant relies, with the above cited cases in 14 East, and 2 Metcalf, and the case then being decided, said: 'We think that the cases last cited, as well as the present case, are clearly distinguishable from Boyd v. United States. In the latter case, the unconstitutional and erroneous or-

der, process, and procedure of the trial court compelled the claimants to produce evidence against themselves, and such order, process, and procedure were also held to be tantamount to an unreasonable search and seizure, while here, and in the other cases cited, the question of illegality was raised collaterally, and the courts exercised no compulsion whatever to procure evidence from the defendants, and neither made orders nor issued process authorizing, or purporting to authorize, a search of premises or a seizure of property or papers, but simply admitted evidence which was offered, without stopping to inquire whether possession of it had been obtained lawfully or unlawfully. Courts, in the administration of the criminal law, are not accustomed to be oversensitive in regard to the source from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right.' "

The rule applicable to this proposition is nowhere more clearly stated than in State v. Flynn, 36 N. H. 64, cited by the Massachusetts court in the quotation heretofore made. That court, speaking through Judge BELL, treated this question in this way. He said: "It seems to us an unfounded idea that the discoveries made by the officers and their assistants, in the execution of process, whether legal or illegal, or where they intrude upon a man's privacy without any legal warrant, are of the nature of admissions made under duress, or that it is evidence furnished by the party himself upon compulsion. The information thus acquired is not the admission of the party, nor evidence given by him, in any sense. The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not disclose the facts which he is desirous to conceal. By force or fraud access is gained to them, and they are examined, to see what evidence they bear. That evidence is theirs, nor their owner's. If a party should have the

power to keep out of sight, or out of reach, persons who can give evidence of facts he desires to suppress, and he attempts to do that, but is defeated by force or cunning, the testimony given by such witnesses is not his testimony, nor evidence which he has been compelled to furnish against himself. It is their own. It does not seem to us possible to establish a sound distinction between that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means. The evidence is in no sense his.''

We see no necessity for further discussing this proposition. Judge SHERWOOD in the Pomeroy case cited and quoted approvingly from the authorities as herein indicated, and in his final conclusion upon this proposition, said: ''These authorities are conclusive on the question; there was no error, therefore, in admitting the evidence referred to.''

## V.

It is next insisted that the court committed error in permitting the cross-examination of the defendant while on the witness stand upon matters not referred to by him in his examination in chief. We shall not burden this opinion with a reproduction of the examination in chief or the cross-examination of the defendant, but it will suffice to say that we have read in detail and carefully considered the examination in chief and cross-examination, and in our opinion there was no substantial violation of the statute which prohibits the cross-examination of a defendant upon matters not referred to in his examination in chief, and there was nothing in the cross-examination which in our opinion had any tendency to prejudice the jury against the defendant or which in any way prejudiced any of his substantial rights guaranteed to him in the trial of this cause.

## VI.

It is next urged by appellant that the testimony of I. B. Kimbrell, prosecuting attorney, as to what took place and what was said when the defendant was brought before him after his arrest, should have been stricken out. It is argued that it is not an admission of guilt and its only effect was to prejudice the jury against the defendant. This contention is, in our opinion, without any substantial merit. This witness, Mr. Kimbrell, was placed on the stand and expressly stated in one of his answers that he was not going to state anything that the defendant failed to say, ''I am going to tell you what he said.'' Mr. Kimbrell stated that, when the police officer brought the defendant to him with a bundle of letters and papers containing some letters addressed to W. C. Moore, he simply asked Mr. Sharpless if he had any statement or explanation to make and the defendant stated that he wouldn't make any statement; that he realized that the statement had better be made at the trial, and he didn't care to talk to Mr. Kimbrell about it. The witness then proceeded to testify concerning the identification of the letters and papers taken from the defendant.

In our opinion this testimony clearly amounted to nothing. It accomplished nothing for the State and was absolutely harmless so far as the defendant was concerned, hence the ruling upon this proposition must be adverse to the contention of counsel for the appellant.

## VII.

It is next insisted that there was a fatal variance between the instrument offered in evidence and the instrument charged to have been forged in the information. This insistence is predicated upon the fact that when this instrument was offered in evidence it was discovered that it had on the back of it an acknowledgment, and that the information did not set out or say

anything about the acknowledgment.   The charge in this prosecution is simply forgery of the deed of release, and the information set out a literal copy of the deed proper.   It makes no allegation concerning the acknowledgment, nor is any offense predicated upon the forgery of the acknowledgment, nor was the acknowledgment offered in evidence.   The State did not offer to read the acknowledgment in evidence, but the defendant seems to have called the attention of the court to the fact that on the back of the instrument there was an acknowledgment, and then makes the objection that there was a variance.   This was a variance sought by the appellant and the trial court, upon due consideration, ruled, and we think properly so, that there was no variance in the proof offered.

In the case of State v. Carragin, 210 Mo. 351, it was insisted, as in the case at bar, that there was a fatal variance between the instrument described in the information and the note offered in evidence.   The information did not allege and set out in its description of the forged instrument the endorsement of the defendant Carragin thereon, but the note offered in evidence had the endorsement of the defendant, the maker of the note, on it.   This court very properly called attention to section 2534, Revised Statutes 1899, which provides that "whenever . . . there shall be any variance between the statement in the indictment or information and the evidence offered in proof thereof . . . . in the name or description of any matter or thing whatsoever therein named or described, . . . . such variance shall not be deemed grounds for an acquittal, . . . . unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant."   After calling attention to the provisions of the section just quoted, this court then announced the conclusion upon the question presented in that case, wherein it was substantially held that the circuit court

failing to find that there was any variance as contemplated by the provisions of said section, the mere omission in the information of the genuine endorsement of the defendant upon the note did not constitute reversible error.

## VIII.

Counsel for appellant complain at the action of the court in refusing to compel the State to elect upon which count of the information it would prosecute the defendant. It is sufficient to say of this complaint that this court has repeatedly announced that it is not error to refuse an election where the several counts refer to the same transaction, and as applicable to this case, the record discloses that the defendant was only convicted upon the second count, therefore there is no ground of complaint which can be successfully directed to the action of the court upon the first count. [State v. Schmidt, 137 Mo. 266; State v. Houx, 109 Mo. 654; State v. Pratt, 98 Mo. 482.]

## IX.

This brings us to the consideration of the assignment of error in which it is insisted that the court failed to properly declare the law to the jury, as well as to cover the entire law applicable to the case, and erroneously refused instructions requested by the defendant.

We do not deem it essential to burden this opinion with a reproduction of the instructions given and refused. We have read and re-read carefully and fully considered all of the instructions, those given and those refused, and in our opinion those given fairly and fully cover every phase of this case to which the testimony was applicable.

Appellant complains at the action of the court in refusing to give instruction number 3, as requested. This instruction was applicable to the subject of the requirements of the law where a conviction is sought

upon circumstantial evidence alone. That subject, in our opinion, had been fully covered by the instructions numbered 6 and 7 given by the court, which were as follows:

"6. The court instructs the jury that the guilt of the defendant cannot be presumed, but must be proven either by direct or circumstantial evidence. Before you can convict the defendant on circumstantial evidence alone, the facts and circumstances must all form a complete chain, and all point to his guilt, and must be irreconcilable with any reasonable theory of his innocence; and before the jury can convict the defendant on circumstantial evidence alone, the circumstances must not only be consistent with his guilt and point directly thereto, but must be absolutely inconsistent with any reasonable theory of his innocence.

"7. The court instructs the jury that in this case the evidence of facts and circumstances must be such as to exclude to a moral certainty every hypothesis but that of guilt of the offense imputed, or, in other words, the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence. And unless the facts and circumstances in evidence are sufficient to satisfy your minds and consciences beyond a reasonable doubt that the defendant is guilty, you should acquit."

As to the complaint directed against instruction number 1, it is sufficient to say that that instruction was applicable to the first count in the information, and as the defendant was not convicted of the offense charged in that count, it is not before us for review under the disclosures of the record in this cause.

It is also insisted that the trial court improperly declared the law upon the subject embraced in instruction number 4. This instruction dealt with the subject as to what weight should be given by the jury to verbal statements made by the defendant, and the complaint of

appellant is directed to the failure of the court to accompany said instruction number 4 with a cautionary instruction against the statements of the defendant. Instructions substantially the same as instruction number 4 have repeatedly met the approval of this court, and cautionary instructions of the nature and character referred to by appellant have also frequently met the approval of this court; however, when such cautionary instruction has not been requested by the defendant, it has not in all cases been deemed essential to be given by the court in order to cover the entire subject.

This question was in judgment before this court in the comparatively recent case of State v. Henderson, 186 Mo. 473. That was a case of great importance; the highest penalty known to the law having been inflicted upon the defendant, that of death. There, as in the case at bar, it was insisted that the failure of the court to give a cautionary instruction constituted reversible error. The proposition received very careful consideration, and Judge GANTT, speaking for this court, announced the rule applicable to this proposition in the following language: "While the better opinion, upon authority and reason, would seem to be that it is not necessary to give the jury a cautionary instruction against the statements of a defendant, the practice of giving a general cautionary instruction that 'the evidence of verbal statements and admissions of the defendant should be considered with care and caution, taking into consideration the liability of the witnesses to misunderstand and misquote the words used,' has been so often approved by this court that we yield our assent thereto, especially as it is in behalf of the accused. A similar rule has been approved as to the testimony of accomplices. [State v. Harkins, 100 Mo. 666; State v. Black, 143 Mo. 171; State v. Jackson, 106 Mo. 174.] But we have often ruled that, while an instruction may be called for in some cases, and it may even be error to fail to give it, it does not necessarily

follow it must be given in every case.   Whether such cautionary instruction should be given must depend on the facts developed in the case.   Where the statements or admissions are merely casual statements extending over a long time, or there is a material variation between the witnesses, or the same conversation is differently narrated by different witnesses, or there is a direct conflict as to the statements or admissions, or the circumstances are such as to indicate the witnesses may not have heard all that the defendant said, or were not in a position to hear all that the defendant said, or considerable time had elapsed and the memory of the witnesses may not be clear for that reason, then the instruction, as guarded in State v. Glahn, 97 Mo. 679, should be given if requested, but in this case, in view of the exceedingly fair, strong and liberal instructions given in behalf of the defendant, and especially as the court instructed the jury that, in weighing the testimony of the witnesses, 'they should take into consideration the conduct and manner of the witnesses on the witness stand, the *opportunity of the witness to know* the facts to which he or she testified, and his or her disposition to relate the same truly and correctly,' we are satisfied no prejudice resulted from the failure to caution the jury against the evidence of the witnesses as to the admissions and statements of the defendant.''

It will be observed in the case at bar that a fair, full and liberal instruction, similar to the one referred to by Judge GANTT in the case just cited, was given by the trial court, saying to the jury that they were the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony, and in determining the credit due to a witness, the weight and value which should be attached to his testimony, they should take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motives actuating the witness in testifying, the witness's rela-

tion to, or feeling for or against the defendant, or the alleged injured party, the probability or improbability of the witness's statements, the opportunity the witness had to observe and be informed as to the matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. These tests as directed by the court were applicable to any witness who testified as to statements made by the defendant, and in view of this fair and liberal instruction upon that subject we have reached the same conclusion as was announced in the Henderson case, that is, that "we are satisfied no prejudice resulted from the failure to caution the jury against the evidence of the witnesses as to the admissions and statements of the defendant."

## X.

This brings us to the final contention of the learned counsel for the appellant, namely, that the testimony developed at the trial of this cause was insufficient to authorize and support the verdict returned by the jury. We are unable to agree with counsel upon this contention. We have carefully read in detail the entire disclosures of the record, and we are unable to comprehend how the jury could have reached any other conclusion. We have indicated fully the tendency of the testimony introduced by the State as well as that introduced by the defendant. It was the exclusive province of the jury to pass upon the testimony, determine the credibility of the witnesses and the weight to be attached to their statements, and as has been repeatedly held by this court, where there is substantial evidence which supports the verdict, the finding of the jury will not be disturbed by the appellate court. No one can read and analyze the facts and circumstances developed upon the trial of this cause upon the part of the State and escape the conclusion that such facts and circumstances

point unerringly to the guilt of the defendant of the offense with which he is charged, and the jury's verdict, being predicated upon such facts and circumstances, if the repeated announcements of this court are to be longer followed, should not be disturbed.

## XI.

Numerous other complaints are made respecting the admission and rejection of testimony, but we do not deem them of sufficient importance to justify a lengthy discussion of them. There should be a limit to the length of an opinion. This one has already been extended too far; therefore, as to the other complaints it is sufficient to say that we have carefully considered them and in our opinion the action of the court in the respects complained of did not constitute reversible error.

We have given expression to our views upon the controlling propositions disclosed by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.