## THE STATE v. ALFRED OWENS, Appellant.

### In Banc, February 11, 1924.

1. **ILLEGAL SEARCH.** Evidence obtained by an illegal search of the defendant's person is not admissible as evidence against him. [DAVID E. BLAIR and WALKER, JJ., dissenting.]

2. ———: **Possession of Whiskey: Evidence.** Defendant was convicted on a charge of having whiskey in his possession, which is an offense under the Missouri statute, and is a misdemeanor. The offense was not committed in the presence of an officer, but defendant at the time was within the peace of the State so far as his conduct was concerned. The sheriff without any warrant of any kind and without arresting him, searched him, and found a pint of whiskey upon his person, and upon evidence thus obtained he was convicted. *Held,* that the search and seizure were illegal, and the evidence inadmissible, and a motion to suppress it should have been sustained.

   *Held,* by DAVID E. BLAIR, J., dissenting, with whom WALKER, J., concurs, that the search and seizure were illegal, but that it does not follow that the discovery made by such illegal

search may not be admitted as evidence upon the trial of defendant.

3. ———: **Federal Constitution: Inapplicable.** The guaranty against unreasonable search and seizure provided by the Fourth Amendment of the Constitution of the United States, and the provision of the Fifth Amendment that a defendant shall not be compelled to furnish evidence against himself, refer only to Federal officers and agents, and have no effect upon the acts of State officials, and evidence illegally obtained by a State officer may be admitted without contravention of those amendments. But nevertheless Sections 11, 12 and 23 of Article II of the Missouri Constitution are almost identical in purpose and in language with those amendments, and the construction of them by the United States courts is important authority in construing said Sections 11, 12 and 23.

4. ———: **Means Unreasonable Search: Legislative Power: Warrant.** The Constitution prohibits unreasonable search. Whether the search is legal or illegal does not always depend upon the presence or absence of a search warrant or the consent of the accused; it might be unreasonable if made by an officer who has a valid warrant in his hands, and reasonable if he had no warrant; and whether it is reasonable is a judicial question. It is not within the power of the Legislature to enact a statute authorizing an unreasonable search.

5. ———: **Objection: Untimely.** When evidence is offered, and objection that it was obtained by illegal methods is then made for the first time, the court will determine only whether it is relevant and competent; it will not pause to determine the collateral question as to how it was obtained.

6. ———: **Private Property: Evidential Value: Contraband.** Private papers, or property possessing evidential value, obtained by officers by means of illegal search, are not admissible in evidence against the person affected, whose premises or person were searched, whether such property is contraband or of other character.
  *Held*, by DAVID E. BLAIR, J., dissenting, with whom WALKER, J., concurs, that no private person has a right to the possession of contraband property, and if it is taken from him by illegal search he can invoke no constitutional provision against its use as evidence against him when charged with a statutory offense of having the same in his possession.

7. ———: ———: ———: **Whiskey: Contraband: Possession.** The Missouri statute (Sec. 6588, R. S. 1919; Laws 1921, p. 413) goes further than the Eighteenth Amendment, in that it makes the pos-

session of whisky unlawful, and such being its language it may be conceded that whiskey obtained from defendant's person by illegal search is not property to which he could lay a legal claim or demand the return; but it does not follow from such concession that the whiskey thus obtained is admissible as evidence to prove that he was in possession of it. If timely objection in the proper way is made, the whiskey obtained by an officer by illegal search is not admissible .as evidence to prove defendant's possession of it, nor is the information the officer obtained by the illegal search and seizure competent evidence.

*Held*, by DAVID E. BLAIR, J., dissenting, with whom WALKER, J., concurs, that there is no logical connection between the illegal search and the use of the whiskey thereby obtained as evidence; that the constitutional inhibition against unreasonable search and seizure is not a rule of evidence, and does not purport to be, and its violation by an officer has nothing to do with the competency of evidence so obtained.

8. ——: ——: ——: ——: **Search of Automobile.** Whether the search and seizure, without a warrant, of intoxicating liquor being carried in an automobile, would be a reasonable search and seizure because the delay in obtaining a search warrant would give time to the rapidly moving vehicle to travel beyond the reach of the officer, is not decided; because the question is not in this case.

9. ——: **By Officer of State: Is Act of State.** An illegal search by the sheriff is the act of the State. It is illogical to say he is the agent or officer of the State when he makes a legal search and seizure, but not when he makes an illegal one. If he is to be held as acting on his own responsibility and not as agent of the State when he makes an illegal search and seizure, the constitutional provision against unreasonable search and seizure would be meaningless and futile mockery.

10. ——: **Constitutional Provision: Non-Self-Enforcing: Remedy: Motion to Suppress: Injunction.** The provision of the Constitution against unreasonable search and seizure is not self-enforcing in the sense that a proper statute has been enacted to punish an officer who violates it, or to provide a remedy to a person injured by its violation whereby he may obtain redress after the unlawful act is committed; but he may avail himself of it to prevent the further wrong of using the thing discovered by the officer as evidence in a prosecution for crime, and his remedy is by a timely motion to suppress the evidence discovered by the illegal search, and he is not compelled to resort to a writ of injunction directed to the prosecuting attorney to prevent him from using as evidence the thing illegally seized.

State v. Owens.

*Held*, by DAVID E. BLAIR, J., dissenting, with whom WALKER, J., concurs, that the thing discovered by illegal search is admissible as evidence at defendant's trial, if otherwise competent, and the fact that the statute gives to the defendant no remedy against the officer does not affect the collateral issue of the competency as evidence of the thing illegally seized when he is tried for the crime of having that thing in his possession.

11. ———: Evidence: Possession: Misdemeanor: No Punishment for Officer. Many cases fail to distinguish between felonies and misdemeanors. The fact that the statute provides no punishment for an officer who illegally searches defendant is itself reason why the State should punish such officer to the extent of disapproving his unlawful acts by refusing to permit to be used as evidence either the information or the thing thus discovered. The State cannot become a party to a violation of its own Constitution for the purpose of securing a conviction for a petty misdemeanor. [DAVID E. BLAIR and WALKER, JJ., dissenting.]

12. ———: ———: Wrongful Act of Officer: Wrongful Act of Private Citizen: Distinction. There are many forceful reasons for excluding as evidence the thing discovered and the information obtained by the illegal seizure by an officer, while admitting as evidence both the information and the thing discovered by the unlawful seizure by a private citizen. The private citizen may have the status of a robber or burglar, or at least of a trespasser, and may be resisted with all the force necessary; an officer commits the trespass under the badge of authority, and the government cannot condone or encourage a violation of law by officers sworn to observe and enforce the law.

13. ———: ———: Necessity. It is not necessary to violate the law in order to enforce the law. Constitutional guaranties of the inviolability of the citizen cannot be swept away by the necessity for the enforcement of a law.

*Held*, by DAVID E. BLAIR, J., dissenting, with whom WALKER, J., concurs, that the rights of the public, whose laws are violated by the defendant, are to be considered, and where he has in his possession contraband articles which the statute forbids him to possess, the enforcement of such statute should not fail because an officer, in his zeal to enforce the law, by an illegal search discovered on defendant's person the very article he is charged with having in his possession.

Appeal from Stone Circuit Court.—*Hon. Fred Stewart, Judge.*

REVERSED.

*Lyons & Ristine, amici curiae.*

(1)   Sections 11 and 23 of Article II of the Missouri Constitution are practically identical with the Fourth and Fifth Amendments to United States Constitution, and while United States Constitution is only applicable to acts of Federal agents, the Federal decisions are pertinent in arriving at proper interpretation of our own Constitution.   (2)   Had defendant made no objection to introduction of liquor illegally seized until offered in evidence at the trial, this court has held the evidence properly admitted.   State v. Pomeroy, 130 Mo. 489; State v. Sharpless, 212 Mo. 176.   (3)   In this case timely motion to suppress was made before trial, and the admissibility of the whiskey in evidence depended upon the legality of search and seizure, rather than character of article seized, and since the search and seizure herein was unreasonable and illegal, and timely motion to suppress was filed, it should have been sustained and evidence excluded.   State v. Pope, 243 S. W. (Mo. App.) 253, 256;   State v. Allen, 246 S. W. 925;   United States v. Folloco and United States v. Ross, 277 Fed. 75;   Boyd v. United States, 116 U. S. 616, 29 L. Ed. 746;   Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652;   Silverthorn Lumber Co. v. United States, 251 U. S. 385, 64 L. Ed. 319;   Gouled v. United States, 255 U. S. 298, 65 L. Ed. 647;   Amos v. United States, 256 U. S. 313, 65 L. Ed. 654;   Burdeau v. McDowell, 256 U. S. 465;   Holmes v. United States, 275 Fed. 49; Dukes v. United States, 275 Fed. 142; State v. Andrews, 114 S. W. (W. Va.) 260; People v. Case, 190 N. W. (Mich.) 290; Youman v. Commonwealth, 224 S. W. (Ky.) 890; People v. Margelis, 186 N. W. (Mich.) 488; People v. Foreman, 188 N. W. (Mich.) 375; Ash v. Commonwealth, 236 S. W. (Ky.) 1032; Helton v. Commonwealth, 243 S. W. (Ky.) 918; People v. 738 Bottles of Intoxicating Liquor, 190 N. Y. Supp. 477; People

v. Markhausen, 204 Mich. 559; Tucker v. State, 90 So. (Miss.) 845; State v. Sheridan, 121 Iowa, 164; Blum v. State, 94 Md. 375; State v. Salmon, 73 Vt. 212; Pitts v. State, 80 So. (Ga.) 510. (4) Unreasonable searches and seizures are oppressive and intolerable, should not be encouraged but discouraged at every opportunity.

*Jesse W. Barrett,* Attorney-General, and *Geo. W. Crowder,* Special Assistant Attorney-General, for respondent.

(1) A search and seizure without a search warrant is not *ipso facto* unreasonable or unlawful. United States v. Snyder, 278 Fed. 658; O'Connor v. United States, 281 Fed. 396; United States v. Rembert, 284 Fed. 996; United States v. Borkawski, 268 Fed. 412; Elrod v. Moss, 278 Fed. 123; In re Mobile, 278 Fed. 949; Lambert v. United States, 282 Fed. 413. (2) No right of property exists in intoxicating liquor. It is declared by law to be contraband. Sec. 6601, R. S. 1919; National Prohibition Act, 41 U. S. Stat. 315; United States v. Fenton, 268 Fed. 221. (3) Contraband articles, or things having no status as property and not susceptible of ownership, cannot be said to be within the protection of the Constitution against unreasonable searches and seizures, nor within the protection of Section 23 of Article 2 of the Constitution of Missouri providing that no person shall be compelled to testify against himself in a criminal case. Art. 4, Const. United States; United States v. Fenton, 268 Fed. (D. C.) 221; City of Sioux Falls v. Wasler, 187 N. W. (S. D.) 821; State v. Flynn, 36 N. H. 64; State v. Banks, 93 So. (Ala.) 293; O'Connor v. United States, 281 Fed. (D. C.) 396; State v. Simmons, 110 S. E. 591; Brent v. Com., 240 S. W. 45. (4) The whiskey seized by the sheriff in this case, being contraband, was admissible in evidence even though obtained by an unlawful or an unreasonable search, and this not-

withstanding a timely motion to suppress the evidence was filed. The court did not err in denying the motion. United States v. Fenton, 268 Fed. (D. C.) 221; City of Sioux Falls v. Wasler, 187 N. W. (S. D.) 821; Brent v. Com., 240 S. W. 45; People v. Mayen, 205 Pac. 435; State v. Magano, 117 Atl. 550; Pasch v. People, 209 Pac. 639; United States v. Hilsinger, 284 Fed. 585; United States v. Camoratta, 278 Fed. 385; United States v. Bateman, 278 Fed. 231. (a) The whiskey seized by the sheriff was the *corpus delicti* of the crime and being contraband, the State alone had a right to its possession and could take it where and when found. United States v. Herine, 276 Fed. 806; United States v. Fenton, 268 Fed. (D. C.) 221; City of Sioux Falls v. Wasler, 187 N. W. 821. (b) The seizure was not the seizure of the property or effects of the defendant. United States v. Fenton, supra. (c) Nor was its seizure any violation of the defendant's constitutional rights. United States v. Fenton, supra. (d) The whiskey stood as a forfeited thing before it was seized by the officer, and the defendant must be said to have become the willing source of evidence against himself when he willingly became the possessor of the forfeited article. United States v. Fenton, supra. (5) Appellant was committing a misdemeanor in the presence of the officer. This gave the officer the right of arrest without a warrant. State v. McNalley, 87 Mo. 44; State v. Flynn, 119 Mo. App. 712; State v. Dierker, 101 Mo. App. 636; Wehmeyer v. Mulvihill, 150 Mo. App. 197. (a) It was not necessary that the sheriff actually see the whiskey before he acted. There was probable cause for his act, arising out of the circumstances under his observation. This was sufficient. United States v. Snyder, 278 Fed. 658; Boeger v. Langenburg, 97 Mo. 396; In re Mobile, 278 Fed. 949; Elrod v. Moss, 28 Fed. 123; Ex parte Morrill, 35 Fed. 261.

WHITE, J.—The appellant was convicted in the Circuit Court of Stone County on the charge of having in his possession a pint of whiskey, in violation of Sec-

tion 6588, Revised Statutes 1919, as amended by the Act of 1921 (Laws 1921, p. 413).

The Attorney-General thus states the case:

"The evidence is short and shows that the defendant, Alfred Owens, on or about January 13, 1922, was detained by the Sheriff of Stone County and searched without any warrant or process of any kind, and that a quantity of whiskey was taken from his pocket."

Defendant filed a motion to suppress the evidence discovered by the sheriff in that illegal search, because in violation of the provisions of the United States Constitution and the State Constitution relating to unreasonable search and self-incrimination. The motion was overruled, and the defendant was convicted upon evidence of the sheriff and his deputy. The sheriff testified that Owens was not doing anything at the time; he did not know whether he was drunk or sober; did not arrest him for drunkenness; did not place him under arrest at the time he searched him. The charge which was made against him was after the sheriff had searched him and found the whiskey. The sheriff did not see nor smell any whiskey; he had no knowledge of it. His deputy came to his house and told him "there was a man full of booze." The deputy did not designate the defendant, nor anybody, and gave no further information. The sheriff first called up the prosecuting attorney and wanted to know if he had a right to search *a car* without a search warrant. Mr. Renfro, the prosecuting attorney, told him he did. The sheriff interpreted this instruction with the utmost liberality, and applied it to persons as well as cars. He took a chance when he saw Owens coming out of a restaurant, seized him and took a pint bottle of whiskey out of Owen's hip pocket. The sheriff, according to his own account of the matter, tempered this violence with a gentle touch, for Owen "never hollered nor made no big noise" in protest of the unconventional proceeding.

I. The principal question for determination in this case is whether evidence obtained by an illegal search

of the defendant's person was admissible in evidence
against him. Several cases are pending in this
court in which that question arises under varying states of fact, and it is important to consider certain general principles which may be applicable
to all.

*Illegal Search.*

We are not now considering the right of an officer to
search a person lawfully arrested, and take from him,
to be used in evidence against him and to assist in procuring his conviction, any article which may connect
him with the commission of a crime. The right is recognized by authorities generally. [Holker v. Hennessey,
141 Mo. 527, l. c. 539; State v. Jeffries, 210 Mo. 302, l.
c. 325; State v. McIntosh, 94 S. C. 439.] Nor is this a
case which brings into question the right of an officer
to arrest, without a warrant, a person whom he has reason to suspect has committed a *felony*. This is a misdemeanor case. [State v. Cushenberry, 157 Mo. 168,
l. c. 181; State v. Moore, 235 S. W. l. c. 1058; State v.
Peters, 242 S. W. 894, l. c. 896.] Likewise it is not
a case where a *misdemeanor* is committed in the presence
of the officer who makes the arrest, because it is admitted
that the defendant was within the peace of the State so
far as conduct was concerned and it was only by the illegal search that his offense was discovered.

II. The guaranty against unreasonable search and
seizure provided in the Fourth Amendment to the Constitution of the United States, and the provision in the
Fifth Amendment that a defendant shall not
be compelled to furnish evidence against himself, refer only to Federal officers and agents
and have no effect upon the operation of State
officials and other persons not clothed with Federal authority. [Weeks v. United States, 232 U. S. 383, l. c.
398; Adams v. New York, 192 U. S. l. c. 595; Burdeau v.
McDowell, 256 U. S. 465; Twining v. New Jersey, 211
U. S. 78.]

*Federal Constitution Inapplicable.*

This means that evidence obtained illegally, by criminal methods, or however extorted, by a State officer or by any person not an officer or agent of the Federal government, may be produced in evidence without contravention of the Fourth or the Fifth Amendment to the Federal Constitution. So, whatever objection the appellant may urge to the introduction of evidence, the Federal Constitution prohibiting unreasonable search falls out of the case.

The several states have followed the doctrine just mentioned as applicable to State officials. [Kennemer v. State, 113 S. E. (Ga.) 551; McGrew v. United States, 281 Fed. 809; People v. Mandel, 154 N. Y. Supp. 231, l. c. 233; City of Sioux Falls v. Walser, 187 N. W. 823; People v. Adams, 176 N. Y. 351; State v. Magnano, 117 Atl. (Conn.) 550.] The doctrine will appear in many of the cases cited below, stating that the State courts have construed these guarantees of the Constitution in a way to protect citizens from the overzealous activity of State officers, and does not protect a person charged with a crime against the treachery of associates or criminality of persons other than State agents.

While the Fourth and Fifth Amendments to the Federal Constitution are not involved here, Sections 11 and 23, Article II of the Constitution of Missouri, are almost identical in purport and in language with those amendments, and the construction of them by the United States courts is important authority for us in construing the like sections of our State Constitution. Many cases of prosecutions for the violation of prohibition laws lately have received consideration by courts of various states with reference to the production of evidence obtained by illegal search of the person or the premises of the defendant, and these will be noticed.

III. Whether a search is legal or illegal is not always determined by the presence or absence of a search warrant. The Constitution protects against an *unrea-*

Unreasonable Search.

*sonable* search. A search may be unreasonable when made by an officer with a valid search warrant in his hands, or a search may be reasonable and entirely within the rights of an officer when he has no search warrant. Whether or not a search is reasonable is a judicial question. It is not within the power of the Legislature to enact a statute which will permit an unreasonable search. [People v. Milone, 195 N. Y. Supp. 488; People v. Case, 190 N. W. (Mich.) 289; United States v. Rembert, 284 Fed. 996; Lowry v. Rainwater, 70 Mo. 152, l. c. 158-159.] In this connection several cases turn upon the alleged consent of the party to be searched. We think such cases usually strain a point to justify the search. If an officer appears at a person's home, and in his official character demands the privilege of searching the premises, the owner of the premises who yields peaceably and silently to the official demand is as much under constraint as if he had forcibly resisted official interference.

IV. In the various Federal district and circuit courts, and in the appellate courts of the several states, there is a wealth of recent precedent upon the subject, and of necessity some confusion in the solution of the constitutional questions, but not so much as some *amici curiae* claim to be present. These may be classified as follows:

Objection: How Made.

(a) Cases where objection is made for the first time when evidence is offered on the ground that it was obtained by means of illegal search;

(b) Where a timely motion or other preliminary proceeding is presented, seeking before the trial to suppress evidence obtained by illegal search;

(c) Where such motion seeks a return of property taken by means of an illegal search and in that connection cases are affected by (1) whether the property has evidential value only, or (2) is the means or instrument for the commission of a crime, or (3) prop-

erty which is contraband, to which the defendant has no
legal right under any circumstance.

When evidence is offered and objection that it was
obtained by illegal means is then made for the first time,
the court will determine only whether the evidence is
relevant and competent. It will not pause to determine
the collateral question as to how the evidence was ob-
tained. [Adams v. New York, 192 U. S. 585, l. c. 594-5;
and that is the doctrine in this State; State v. Pomeroy,
130 Mo. 489, l. c. 498-9; State v. Sharpless, 212 Mo. 176,
l. c. 197, 198, 199.]

V.   The rule is general that private papers, or prop-
erty possessing evidential value only, obtained by gov-
ernment officers by means of illegal search, are not ad-
missible in evidence against the person

**Private Property:**
**Evidential Value.**   affected, whose premises were searched.
This is the rule of the United States Su-
preme Court, and is followed almost universally by the
inferior Federal courts and State appellate courts.  This
rule applies whether the evidence is procured by com-
pelling the defendant to produce evidence against him-
self or whether it is discovered by means of an illegal
search.   [Greenbaum v. United States, 280 Fed. (C. C.
A.) 474; United States v. Lydecker, 275 Fed. 976; United
States v. Abrams, 230 Fed. 313; United States v.
Maresca, 266 Fed. 713; In re Both, 192 N. Y. Supp. 822;
United States v. Kraus, 270 Fed. 578; Ex parte Jack-
son, 263 Fed. 110; Dukes v. Commonwealth, 244 S. W.
(Ky.) 74; Hess v. State, 202 Pac. (Ok.) 310; Blum v.
State, 94 Md. 375; People v. Jakira, 193 N. Y. Supp.
306, l. c. 314; People v. Manko, 189 N. Y. Supp. 357;
State v. Sheridan, 121 Iowa, 164; State v. Rowley, 187
N. W. (Ia.) 7.]

The Attorney-General in his oral argument in Di-
vision admitted the correctness of the rule, but claimed
it had no application here, because in this case the prop-
erty taken was contraband and therefore not property
at all; that defendant having no right to it as property

could not ask to have the evidence suppressed. That last presents the precise question to be determined in this case.

We will first consider cases arising in the United States Supreme Court. In Boyd v. United States, 116 U. S. 616, the defendant was charged with evading import duty on plate glass shipped into New York, and an order was made by the district judge requiring the claimant of the property to produce the invoice of the glass. The Supreme Court thus stated the question presented, l. c. 622:

"Is a search and seizure, or, what is equivalent thereto, a compulsory production of a man's private papers, to be used in evidence against him in a proceeding to forfeit his property for alleged fraud against the revenue laws—is such a proceeding for such a purpose an *unreasonable* search and seizure' within the meaning of the Fourth Amendment to the Constitution?"

The court held it was unreasonable, and that the proceeding was also contrary to the Fifth Amendment to the Constitution which provides a man shall not be compelled to furnish evidence against himself. According to many of the courts the latter reason was entirely sufficient without a determination that it was contrary to the Fourth Amendment in regard to search and seizure. It will be noticed a *warrant* for the search, a court order, did not make it lawful.

In the case of Adams v. New York, 192 U. S. 585, it was held that evidence obtained by illegal search would be admitted where the objection was presented for the first time when the evidence was offered.

The next leading case was Weeks v. United States, 232 U. S. 383. The plaintiff in error was convicted for using the mails for transportation of lottery tickets. The marshal, without warrant, searched his room and carried away certain letters and articles. Weeks then petitioned the court for a return of the property and papers. The court ordered a return of such property

as was not pertinent to the charges against the defendant, but denied his petition as to the pertinent matter. During the trial which followed the defendant objected to the introduction of the evidence thus obtained, and in the Supreme Court assigned as error the refusal of the district court to grant his petition for a return of the property, in violation of the Fourth and Fifth Amendments to the Constitution of the United States. The Supreme Court held that the taking of the letters from the house of the accused by an official of the United States was in violation of his constitutional rights, and the refusal to return them upon a seasonable application was error.

In the case of Gouled v. United States, 255 U. S. 298, the defendant Gouled was charged with being a party to a conspiracy against the United States. At his trial a certain paper surreptitiously taken from his office by one acting under the direction of officers of the United States was offered in evidence and he was convicted. The court held the search and seizure unreasonable, a violation of the Fourth and Fifth Amendments to the Constitution, approved the ruling in the Boyd Case and the Weeks Case, and held the evidence improperly admitted. The court said (l. c. 304) that such rights as are declared by the two amendments are indispensable to the full enjoyment of personal security, personal liberty and private property; that they are to be regarded as the very essence of constitutional liberty, and the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right of trial by jury, the writ of *habeas corpus,* and due process of law. The court said further, l. c. 306:

"Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the

Government of the United States by stealth, or through
social acquaintance, or in the guise of a business call,
and whether the owner be present or not when he enters,
any search and seizure subsequently and secretly made
in his absence, falls within the scope of the prohibition
of the Fourth Amendment.''

In determining whether the evidence thus obtained
was admissible, the court said:

''In practice the result is the same to one accused of
crime, whether he be obliged to supply evidence against
himself or whether such evidence be obtained by an il-
legal search of his premises and seizure of his private
papers. In either case he is the unwilling source of the
evidence, and the Fifth Amendment forbids that he
shall be compelled to be a witness against himself in a
criminal case.''

The same ruling was had in the case of Amos v.
United States, 255 U. S. 313. Those cases were deliv-
ered in 1920, and the rulings approved in the later case
of Burdeau v. McDowell, 256 U. S. 465. In the recent
case of Essgee Company v. United States, in an opinion
delivered by Chief Justice TAFT, May 7, 1923, the prin-
ciple announced in the Boyd, Weeks, and Gouled cases
was approved.

For nearly forty years the United States Supreme
Court has uniformly held that evidence obtained by ille-
gal search is not admissible when timely objection is
made. In nearly all the states where the constitutions
have provisions similar to the Fourth and Fifth Amend-
ments to the Federal Constitution, the courts agree with
the ruling in the United States Supreme Court in the
interpretation of the principle. In the State courts and
the Federal district and circuit courts a much greater
variety of circumstances is presented by the facts, be-
cause of the greater number of cases, but as stated the
rulings are almost uniform. It may be taken as a rule
well established and of almost universal recognition.

VI.  It is insisted by the State that inasmuch as
the whiskey found upon the defendant's person was con-
traband under the Eighteenth Amendment, and not prop-
erty in which the defendant could claim
Contraband:          ownership, the defendant had no right to
Possession:          have it returned and therefore it could be
Inadmissible
As Evidence.          used in evidence.  The whiskey discovered
was not contraband on account of conflict
with the Eighteenth Amendment, which merely forbids the
manufacture, sale, importation, exportation and transpor-
tation of intoxicating liquors.  The information charges
only a violation of the Act of 1921 of Missouri, amending
Section 6588, Revised Statutes 1919 (Laws 1921, p. 413),
by adding to the Prohibition Act the word "possess."
He was "in possession" of a bottle of whiskey, and
while that possession may have been entirely innocent
of any intent to violate the Eighteenth Amendment, it
may be conceded that the State is correct in saying, be-
cause of the State statute, it was not property to which
he could lay any legal claim.  Defendant did not ask for
any return of it; he only asked that the evidence dis-
covered with it be suppressed.  In the cases from the
United States Supreme Court mention is made of stolen
or forfeited property, implements used in the commis-
sion of the crime, and the like, discovered by *legal search.*

In the Federal District Court of Montana in a *ha-
beas corpus* case (Ex parte Jackson, 263 Fed. 110), a
prisoner was held for deportation on account of teach-
ing unlawful destruction of property.  In a search of
his residence without a warrant, papers and documents
indicating his guilt were seized.  The court said, l. c. 113:

"For the inalienable rights of personal security and
safety, orderly and due process of law, are the funda-
mentals of the social compact, the basis of organized so-
ciety, the essence and justification of government.  .  .  .
No emergency in war or peace warrants their violation,
for in emergency, real or assumed, tyrants in all ages
have found excuse for their destruction."

That doctrine is applied directly to cases involving illegal search for liquor. A case arose in the Western Federal District of Missouri before Judge Von Valkenburgh, where the Federal enforcement officers procured the assistance of the police at Kansas City who were held to be Federal agents and subject to the same restrictions as Federal officers by the Fourth and Fifth Amendments. [United States v. Folloco, and United States v. Ross, 277 Fed. 75.] Two cases are disposed of in one opinion. The police seized a still, some whiskey and mash on the premises of each of the defendants. The defendants made application to the court to suppress the evidence and the application was sustained. Judge Von Valkenburgh made this comment (l. c. 82-83) in speaking of the activity of the police as Federal agents:

"If we were to ignore this circuitous, uninterrupted, but substantial evasion of the Fourth Amendment to the Constitution of the United States, even though that evasion was unconscious and unstudied, we should countenance a departure from the spirit of our fundamental law more harmful in its far-reaching effects than the evil here sought to be remedied."

A petition for the return of illegally obtained evidence indicating the defendant was guilty of larceny, was sustained by the Federal court. [Honeycutt v. United States, 277 Fed. (C. C. A. 4) 939.] The goods and checks seized were incompetent evidence against the defendant, but in that case they possessed evidential value only.

Liquor was illegally seized without a search warrant in the case of People v. 738 Bottles of Intoxicating Liquor, 190 N. Y. Supp. 477. The court held that the *evidence* obtained by the illegal seizure was incompetent, and the defendant's right to a return of the liquor was a matter for later determination.

The Supreme Court of Mississippi, in a case where a defendant was charged with the unlawful making of in-

toxicating liquor (Tucker v. State, 90 So. 845), held that the evidence obtained by officers in making an illegal search of defendant's home and premises was incompetent, and that being the only evidence in the case the court ordered the defendant's discharge. In that case the court reviewed at length cases in the Federal Supreme Court and followed those rulings.

To the same effect liquor discovered by an illegal search was held inadmissible in evidence. [Giles v. United States, 284 Fed. (C. C. A. 1) 208.] Also the following: People v. Marxhausen, 204 Mich. 559; Youman v. Commonwealth, 189 Ky. 152; State v. Sheridan, 121 Iowa, 164; State v. Height, 117 Iowa, l. c. 661; Blum v. State, 94 Md. 375; State v. Slamon, 73 Vt. 212. Those cases follow the same rule as that announced by Judge Van Valkenburgh in the cases noted above.

VII. This question under consideration must not be confused with that arising in cases where a search without warrant under certain conditions is held to be legal and the evidence thereby disclosed admissible for that reason. A great deal of confusion arises by failure to distinguish between cases where the search clearly is illegal and where the question turns upon the legality of the search. Many cases are cited by the State—certain automobile cases, for instance—in support of the admissibility of the evidence where the search was held to be legal.

*Confusion: Legal Search: Contraband as Evidence.*

A sheriff came upon defendant asleep on the highway in a disabled truck and found a large quantity of whiskey in the truck. A motion by the defendant to have the whiskey returned to him was refused, and the Supreme Court of Washington held it was a correct ruling. [State v. Miller, 209 Pac. (Wash.) 9.] The court said it was not called upon to decide whether the whiskey was admissible in evidence on the ground that the officer got possession of it by trespass, for in that case there was no trespass, and added this, l. c. 10: "The consti-

tutional provisions invoked by the appellant do not prohibit a seizure without a warrant, where there is no need of a search, and where contraband subject-matter or unlawful possession of it is *fully disclosed and open to the eye and hand.*"

The case of State v. Llewellyn, 205 Pac. 394, is where a policeman entered a saloon, a public place, and saw a pitcher of intoxicating liquor. The officer had no warrant, but he had a right to make the arrest, because the law was being violated in his presence, and the evidence was held admissible.

Where a search was made in a woodland lot belonging to the defendant and evidence of running an illicit still was found, it was held competent to prove it, because the search was lawful and not "unreasonable." [Brent v. Commonwealth, 240 S. W. (Ky.) 45.]

Where rum-runners were conducting an illicit trade from Mexico into California an officer searched, without a warrant, an automobile used in the business and arrested the driver. [United States v. Bateman, 278 Fed. 231.] In an action for illegal arrest and illegal search of plaintiff's automobile the search was held by the court to be reasonable, because the officers had information that the defendant was transporting liquor. The officer also had a warrant which was out of date. To like effect are Elrod v. Moss, 278 Fed. 123; O'Connor v. United States, 281 Fed. 396.

Where the actions of a defendant justified an officer in the belief that he was transporting liquor, his search of the defendant's automobile was not unreasonable, although without a warrant. [Lambert v. United States (C. C. A. 9), 282 Fed. 413.] In that case, however, the court said (l. c. 415): "It is conceded by counsel for the Government that the search of one's *person, his home,* his papers, or other effects, *without a valid warrant is illegal,* and that *evidence so obtained cannot be used in support of a criminal charge against him.*" (Italics ours).

In a case where a defendant was convicted of transporting intoxicating liquor the evidence was furnished by a State constable who searched the defendant's premises without a warrant, and it was held the evidence was competent because discovery was not made by a United States officer and the Fourth Amendment only applies to and restricts the operation to Federal officers. [Kanellos v. United States, 282 Fed. 461.]

In Queck v. Hawker, 282 Fed. 942, it was held that goods illegally seized under a defective search warrant should be ordered returned upon petition therefor by the defendant. The kind of goods in that case is not mentioned.

A defendant was convicted of unlawfully having in his possession certain intoxicating liquor, one quart of red whiskey and one pint of moonshine whiskey. Under the law, the red whiskey might be lawfully possessed under certain circumstances, while moonshine was contraband, in which the defendant could have no property. [State v. Andrews, 114 S. E. (W. Va.) 257, 1. c. 260.] The court in commenting upon the admissibility of the evidence obtained by an unconstitutional search and seizure said, 1. c. 260: " . . . that if the knowledge of such evidence is gained from an independent source, it may be proved like any other facts, but that knowledge thereof gained *by the State's own wrong cannot be used* in the way proposed in this case." The court then announced this conclusion as to both the moonshine and the red liquor, "that the same was acquired by an unlawful and unreasonable search of his premises; second, that having so acquired the liquor through the agency of its officers, the State could not make use thereof as evidence on the trial, nor of any information acquired by the officers in making such search and seizure."

The case of People v. Milone, 195 N. Y. Supp. 488, is where officers without a search warrant entered defendant's place of business and seized a revolver which was behind his counter. It was held that the search was lawful and the evidence admissible.

We have reviewed the automobile cases to show they are not in point: in each of such cases the search was held to be *reasonable,* because the delay in obtaining a search warrant would give time to the rapidly moving vehicles to be beyond the reach of the officers or to have disburdened itself of its load. Whether such a reason justifies the search is not before us; we can determine that question when it comes up in a proper case. We are *now* considering the admissibility of evidence obtained by means of an *unlawful search.*

Cases are numerous, some of which are cited above, which make no distinction between private papers, documentary evidence, and any other evidence, as mere evidence, discovered by illegal search. The fact that the property is contraband—not property which could be returned to the defendant on his claim—should make no difference as to the right of the State to produce evidence obtained illegally. If the officer enters the dwelling of one not charged with a crime, and by stealth or forcibly without a warrant or any legal authority obtains papers of an incriminatory nature, it is almost universally held that such papers may not be produced in evidence. What difference does it make if the officer, by the same unlawful method, discovers property, the implements for the commission of crime? Suppose an officer by that means discovers a letter or canceled check, showing the defendant has violated the law by importing liquor; what is the difference between that and the discovery of liquor? One fact is exactly as significant as the other. The discovery of evidence of the offense occurs in exactly the same way. The fact that the defendant had no right to the liquor, that it is already forfeited to the State as contraband, does not affect the quality of the *evidence.* If he should ask a return of it of course that would be denied, because he has no right of property in it, but he may ask the court to suppress the evidence shown by the check. To attempt a distinction is a refinement entirely without substance. If the officer should lose both the papers and the liquor he could testify about the liquor, but could not

State v. Owens.

testify about the papers! To the State the liquor, like the papers, has evidential value only. It might possess another element of value to the officer.

The authorities relied upon by the State in support of its position are neither numerous nor consistent with each other. Above we have already reviewed some of them, showing they are not relevant to this particular question: admissibility of evidence discovered by an illegal search. Foremost among those authorities cited by the State is the essay of Professor Wigmore recently published in the American Bar Association Journal. Professor Wigmore has written on Evidence with great ability and force, such that his conclusions have weight with the courts, some of which have quoted him at length. He disagrees with the Federal Supreme Court in the principle announced in the Boyd Case and in the Weeks Case; thinks the conclusions reached there are unsound and illogical. He is thereby consistent and sees no distinction between incriminating papers and contraband property.

VIII. In considering the weight of authority more effect should be given to the United States courts than to the courts of any State, and perhaps than to the courts of all the states; not merely because the United States Supreme Court is the highest authority, but for other reasons: the Federal rule is the result of years of mature consideration during which the question at issue was before the Federal courts under varying circumstances of fact, so that it has been tested and applied to nearly all conceivable conditions. Section 11, Article 11, of our Constitution is almost identical in language and exactly identical in purport with the Fourth Amendment to the Federal Constitution. The construction of that section by the Federal court is, therefore, of the highest authority.

The Attorney-General, with commendable industry and fairness, has collated from more than forty states, cases bearing upon the subject. I have examined these

302 Mo. Sup.—24.

cases with care and find that the weight of authority *in the states* favors the conclusion I have reached, not appreciably in the number of courts which have reached that conclusion, but on account of the inconsistent reasons advanced in support of the opposite view, and the strong dissenting opinions appearing in many such cases. Thirteen states in the list have unequivocally announced adherence to the Federal rule, directly or in effect: Idaho, Indiana, Kentucky, Michigan, Mississippi, Montana, Oklahoma, Oregon, Tennessee, Washington, West Virginia, Wisconsin, Wyoming. The Attorney-General concedes only eleven. His concession does not include Idaho. In the case of State v. Myers, 36 Idaho, 396, cited by him, five judges participated in the decision. The principal opinion announced the rule contended for by the State and was concurred in by *one* judge; three other judges concurred in the result, because the search by which the evidence was discovered was lawful, and announced their adherence to the Federal rule.

Indiana is listed as against the conclusion I have reached. But two recent cases (Callender v. State, 138 N. E. 817; Flum v. State, 141 N. E. 353), mentioned in the list, show an unqualified endorsement of the Federal rule.

I find only twelve states where the rule contended for by the State has been unequivocally announced. They are Arkansas, Alabama, California, North Carolina, Delaware, Georgia, Iowa, Kansas, Nebraska, Utah, Ohio and Texas.

The force of the decisions in these states is broken by inconsistent and inadequate reasons in support of the position, and by strong dissents. For instance, the Supreme Court of Ohio, in the case of Rosanski v. State, 106 Ohio St. 442, where several cases were decided together, stated the ruling *obiter,* the search being legal. That court uses Professor Wigmore's expression, "misguided sentiment," in characterizing a disposition to protect constitutional rights. That case is entirely inconsistent with another case decided by the same court at the same term (Ciano v. State, 105 Ohio St. 229), which

quotes approvingly the Federal rule laid down in R. C. L., where that work says that an objection to admissibility of evidence comes too late if presented for the first time when the evidence was offered, and then says this: "But since there is a right, there must of necessity be a remedy, and the remedy is to be found in the making of a timely application to the court for an order directing the return to the applicant of the papers unlawfully seized."

In the Arkansas case, Benson v. State, 149 Ark. 633, there was no timely motion to suppress, or other objection, except at the time the evidence was offered, and it was held admissible under the general rule stated in the Federal cases that the court would not then stop to inquire into that collateral question.

The Alabama case, Banks v. State, 207 Ala. 179, turns mainly upon the interpretation of the Federal Constitution, which is held not to apply to the State.

In Georgia two cases are cited (Calhoun v. State, 144 Ga. 679, and Kennemer v. State, 154 Ga. 139.) There was no preliminary attempt to suppress the evidence and the general rule was announced: that the court would not stop to inquire when the objection was made for the first time at the trial.

In Delaware, State v. Chuchola, 120 Atl. 212, the so-called contraband rule was announced where the admissibility of evidence and the right of property was hopelessly confused.

The rule in Iowa, State v. Tonn, 195 Iowa, 94, was by a divided court. A strong and well-reasoned opinion, concurred in by two judges, adheres to the Federal rule. It is said in that dissenting opinion (l. c. 117): "It is, of course, to be admitted that certain state courts seem to be committed to the opposite view; but many, if not most, of the cases cited by the majority as opposed to the doctrine of the Federal cases are not really in point, in that they have been decided in states not having a constitutional guaranty identical with that of the Fourth amendment to the national Constitutional."

In the cases listed from Kansas no preliminary motion was presented, and in the latest one, State v. Van Wormer, 103 Kan. 309, the persons who made the search were not shown to have any official character, and of course could not be affected by the Constitutional provision.

Two cases are listed from Massachusetts. In the first, Commonwealth v. Dana, 2 Metc. (43 Mass.) 329, the subject was lottery tickets and it was held that the search warrant was legal, search reasonable; and in the later case, Commonwealth v. Wilkins, 138 N. E. 11, the search was by individuals and not by State officers.

Other cases listed by the Attorney-General as supporting the view of the State may be mentioned:

State v. Barela, 23 N. M. 395, was a case where the defendant was lawfully under arrest for a felony, his shoes were taken by the sheriff and fitted to the tracks which were supposed to have been made by the guilty person. It was held that it was not *self-incriminating,* and the opinion cites in support of the ruling, State v. Newcomb, 220 Mo. 54. The unreasonable search provision was not considered.

A Colorado case, Pasch v. People, 72 Colo. 92, is one in which the court speaks of an illegal seizure, but the Constitution is nowhere mentioned. No constitutional right of any kind was under consideration; it was merely a common law trespass.

A South Dakota case cited, State v. Madison, 23 S. D. 584, simply announces the rule that the court will not inquire at the time the evidence is offered how it was obtained, and cites the Missouri (Pomeroy) case. The court there does not seem to have had under consideration the particular question at issue here.

A Maryland case, Lawrence v. State, 103 Md. 17, considers a search which took place after the defendant was lawfully arrested (l. c. 33).

In the New Jersey case, State v. MacQueen, 69 N. J. L. 522, the court states the general rule, and says (l. c. 528): "And it would seem that after arrest made the person of the accused may be properly examined without

a search-warrant in order to find evidence of his guilt,
and that such an examination would not be deemed an
unreasonable search—'' A question not in the present
case.

A Vermont case is cited, State v. Suitor, 78 Vt. 391,
in which the Constitution was not mentioned.  Evidence
discovered by illegal process was held admissible, but the
illegality was a mere trespass.

In the Virginia case, Lucchesi v. Commonwealth, 122
Va. 872, the search, made after the defendant was law-
fully arrested, was held to be perfectly lawful.

New York is listed as supporting the State's posi-
tion, People v. Adams, 176 N. Y. 351.  That case turns
upon the self-incrimination section of the Constitution,
and not upon unreasonable search.

The case of People v. Esposito, 194 N. Y. Supp. 326,
in an inferior court, turned upon the lawfulness of arrest;
the prisoner was searched after being arrested.  As I
read the case the arrest was held to be lawful.  I think
other cases cited by me show that New York adheres to
the Federal rule.

In North Dakota, State v. Pauley, 192 N. W. 91, the
offense was committed in the presence of the officer and
the search was held to be lawful.

These are samples of the authorities which are cited
by the State in support of its position.  The only states
in which there is the holding contended for are in the
list mentioned above, and they, as shown, are not con-
sistent, and some of them can hardly be said to announce
unequivocally the doctrine contended for.  Often, as
stated, it is *obiter,* and often by a divided court.

IX.   On the re-argument in Court en Banc the State
claimed that the officer (the sheriff in this case) who con-
ducts an unlawful search is acting on his own responsi-
bility, not as an agent of the State; that the State is not
responsible for, nor a party to, his ac-
**Sheriff: Illegal
Search Act of State.** tion; therefore the question whether
he violated the Constitution does not
come into the case on trial.

Let us follow that argument to its logical conclusion:

By the rule laid down by the United States Supreme Court and followed by the several states, the application of the constitutional provision against unreasonable search is narrowed to Government officers and agents. It is the act of only the Government itself through its authorized agents from which the provision is intended to protect the individual. · The Government is not concerned with unlawful trespass and searches by others than its own officers. So, here, it is only the unreasonable search of the State officers, acting for the State, which our Constitution provides protection against.

Then we reach this anomalous result: If the State officer is armed with a warrant, or other lawful authority, the provision does not apply, because the search is lawful and not unreasonable. If the officer has no warrant or authority to search he is acting on his own, not for the State, and the provision of the Constitution does not apply to him. Then, upon that logic there is no imaginable case in which the constitutional provision against unreasonable search would apply. It is a dead letter, because no one can violate it. It is a mere ineffectual gesture, instead of a substantial constitutional principle.

Put in another form the argument is this: The State can do no wrong: a State officer acting unlawfully in his official capacity is not the agent of the State, but acts on his own responsibility. The constitutional provision prohibiting unreasonable search applies only to agents of the State. Therefore it is impossible for anybody to violate that provision of the Constitution.

The State acts only through its officers, and agents. The sheriff did not, as a private individual, search the defendant and afterwards arrest him; he did it as *sheriff*, by virtue of authority of his office. His act was the act of the State, otherwise the constitutional provision is meaningless and cannot be applied in any case. It is suggested that in certain civil cases an officer is held liable personally for an unlawful trespass. That is in line with cases where the agent of a private, or a *quasi*-public,

corporation is liable for a trespass and his principal is also liable. The sheriff has been guilty of a breach of duty; that cannot make his act any the less an official one.

X.  The State argues further that the constitutional provision is not self-enforcing, and no statute has been passed to punish an offending officer or provide a remedy to the person injured for the infraction of his constitutional right.. It is true there is no adequate remedy available to the person injured whereby he may obtain *redress after* the act. He would have an action for an unlawful trespass or for assault, at common law. The Constitution adds nothing to his rights in that respect. The only remedy which can possibly benefit him is a preventive one. The Attorney-General in his oral argument admitted that injunction would lie to prevent the unlawful search, and later prevent the use of evidence discovered thereby, but argued that such action would be between the party injured and the offending officer, in which the State has no concern. Manifestly then injunction would lie to prevent a prosecutor from using it. In either case it would not lie unless the State was a party to the act, for otherwise the constitutional provision would not be in question. If an injunction would lie, why not a motion—the remedy universally resorted to and held available where any remedy has been allowed? Why drive the party injured to an inadequate cumbersome method of preventive relief when adequate and proper method is provided and universally resorted to where the question is raised?

There is in fact *no remedy*, no method, by which the citizen can receive the protection of the Constitution except the method here contended for by the appellant. No case is mentioned, and I believe none can be found, where this constitutional right was protected to the citizen except in the suppression of evidence discovered by unlawful search.

*(margin note:* Constitutional Protection: Non-Self-Enforcing: Remedy.*)*

XI. All the decisions cited in support of the State's position have entirely overlooked the most significant feature of a situation like this. The appellant's offense was a misdemeanor. He.was charged with the possession, not with the manufacture or sale, of liquor. He should be punished if guilty, but his guilt should first be proven by legal evidence legally obtained. The officer of the law, the sheriff, committed two offenses: he was guilty of assault—more serious than the offense of defendant, because it was *malum in se,* and because he was an officer. He also violated the Constitution.

The Attorney-General correctly says there is no statute providing punishment for the officer's offense. The only punishment which can be inflicted upon him is to deny him the benefit of his unlawful discovery. To admit the evidence is to approve his unlawful act; is for the State to become a party to the violation of its own Constitution for the purpose of securing a conviction for a petty misdemeanor.

XII. The Attorney-General agrees with Professor Wigmore in repudiating the rule explained
**Officer and Private Citizen.** in Paragraph II, above. The State's position appears in this question asked by the Supreme Court of California in People v. Mayen, 205 Pac. 442: "What difference does it make whether the evidence secured was by the wrongful act of the officer, or the wrongful act of a private citizen?"

It is argued that the United States Supreme Court was wrong in making that distinction. This confuses the right of the defendant with the demands of the Constitution. The government must maintain its integrity regardless of its effect upon the individual case. It was said by Chief Justice TAFT in the case of Essgee Co. v. United States, 43 Sup. Ct. Rep. l. c. 516, in commenting upon an earlier case: "This court held that the Government could not, while in form repudiating the illegal seizure, maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had."

In the commission of the unlawful act there is all the difference in the world. If a private person undertakes to break into your home he has the status of a burglar or robber. You may resist him, with all necessary force. You are armed with the consciousness that you are within the law in whatever injury you may do him in protecting the sanctity of your home and person. But where an officer with the badge of authority intrudes, you are disarmed at once. However innocent you may be, you feel it necessary to submit.

It is one thing for the government to take advantage of information which one wrongdoer reveals of another, or the revelations which ensue when thieves fall out, and quite another thing for the government to condone or encourage a violation of the law by officers sworn to observe and enforce the law. If peace officers are rewarded for breaching the peace, what more potent influence could induce people generally to hold the law in contempt and to break through legal barriers which stand across the path of their desires!

The trend of the argument in favor of admitting such evidence is that it is necessary and the only way to enforce the prohibition law. That brings us squarely to the paradoxical pronouncement: *it is necessary to violate the law in order to enforce the law!*

The Mayen Case makes the further point that this unlawful seizure is complete and finished; the offense is ancient history at the time of the trial, and the exclusion of the evidence would not redress the wrong which the defendant has suffered.

Since the wrong was already inflicted we should forget it and allow the wrongdoer to enjoy the fruits of it in the approval of the court and the conscious virtue of carrying through his enterprise to a successful finish. The question is not whether the defendant can be redressed in his case upon trial, but whether the reckless officer may be encouraged by the approval of the court to repeat the trespass.

The Supreme Court of Kentucky makes this comment on the subject (Youman v. Commonwealth, 224 S. W. 860): "It is trifling with the importance of the question to say, as some of the courts have said, that the injured party has his cause of action against the officer, and this should be sufficient satisfaction. Perhaps, so far as the rights of the individual are concerned, this might answer; but it does not meet the demands of the law-abiding public, who are more interested in the preservation of fundamental principles than they are in the punishment of some petty offender."

Professor Wigmore thus characterizes that argument: "All this is misguided sentimentality." The State copies that cynical characterization. We think Professor Wigmore in his essay has not shown his usual logical force and clearness.

If the rule obtains that an officer may enter any house and seach any person any place without a warrant or knowledge—if he, vaingloriously sensible of the little brief authority with which he is invested, is encouraged to arrest and search because he suspects someone of some unknown crime and is rewarded according to his success in discovery, encouraged to hunt and ferret on a chance of hitting upon something suspicious—a system of espionage would ensue characteristic of those countries where the sanctity of the home and inviolability of the citizen are unknown and official interference in those matters is the common experience.

It is an incident of every reform that enthusiasts, without experience, and with rapt vision of a glorious result, forget or ignore the limits of legitimate method, disdain conventional restraints and regular processes, through which alone permanent progress can be achieved. It is a state of mind which causes violent reaction rather than steady progress toward the end desired. It is for the courts where their offices are invoked, to temper excess by enforcing the restraints which the law imposes for the peaceful orderly conduct of affairs. The lack of

discrimination arising from this enthusiasm is illustrated by this argument of Professor Wigmore:

"If officials illegally searching come across an infernal machine planned for the city's destruction and impound it, shall we assume that the diabolical owner of it may appear in court and demand its return and be ordered by the court restitution with perhaps an apology for the 'outrage'?"

Here is a hapless confusion of claim to property with admissibility of evidence. Violence of statement is not force of reasoning. We are concerned with evidence in a misdemeanor case, and it is beside the question to talk of arson, murder and treason.

Some misunderstanding has arisen in the interpretation of the Federal rule, because the Boyd Case, 116 U. S. 616, confuses amendments four and five to the Federal Constitution. The point in the Boyd Case was whether the Fifth Amendment was violated by compelling defendant to incriminate himself. It was also held, though unnecessary, that the search was unreasonable, contrary to the Fourth Amendment. In State v. Pomeroy, 130 Mo. 489, the Boyd Case is distinguished on the point of compelling the defendant to furnish evidence against himself. Judge SHERWOOD in writing the opinion quotes at length from State v. Flynn, 36 N. H. 64, in which case the point under consideration was whether the defendant should be compelled to incriminate himself. The unreasonable search section of the Constitution was not mentioned. While it was held that competent evidence, no matter how obtained, was admissible, no constitutional question was raised by a preliminary attempt to suppress. The evidence was discovered by a search *after* a lawful arrest. Later Federal cases have construed the Fourth Amendment in more precise terms, as quotations above show. In the Sharpless Case, 212 Mo. l. c. 197, certain papers were taken from the defendant *after* he was arrested, and the court held them admissible because they were lawfully seized. What was said about admissibility of evidence obtained by unlawful search was *obiter*. The

writer of this opinion thinks the search in both cases was lawful.

No doubt many rulings on the subject have been influenced by the difficulty of enforcing new and drastic statutes to which the people were wholly unaccustomed and to the enforcement of which some sections of the population have presented determined opposition. It is an instance illustrative of the old adage, "Bad cases make bad law." However difficult to maintain the judicial poise in the face of such impediments, involving popular reproach for failure, if we should allow our deliberations to be influenced by considerations of expediency or by our own judgment regarding the propriety of any legislative act, we would at once, and rightly, be subject to the criticism that we were victims of "misguided sentiment."

The judgment is reversed and the defendant discharged. *Woodson, C. J.,* and *Graves* and *Ragland, JJ.,* concur; *James T. Blair, J.,* concurs, but thinks case should be remanded; *David E. Blair, J.,* dissents in a separate opinion, in which *Walker, J.,* concurs.

DAVID E. BLAIR, J. (dissenting).—The disposition of the appeal in this case turns solely and squarely upon the action of the trial court, after overruling a motion to suppress, in admitting in evidence certain intoxicating liquor found upon the person of the appellant by the sheriff. The appellant had not been arrested prior to the search, and it may be admitted that the search of appellant and the seizure of the liquor were in violation of Section 11, Article II, of the Constitution of this State and therefore illegal. Notwithstanding, it does not follow that the discovery made by such illegal search may not be introduced in evidence upon the trial.

There are only two cases in this State which pass upon this question, to-wit, State v. Pomeroy, 130 Mo. 489, and State v. Sharpless, 212 Mo. 176. In both cases it was squarely held that it makes no difference how the evidence was procured, whether by legal or illegal search or by cunning, stealth or force, the manner of

securing the evidence cannot and does not affect its admissibility in the trial.

It is uniformly held that courts will not form a collateral issue to try the question of how incriminating evidence came into the hands of the person proposing to introduce it at the trial. To get away from this rule the practice has arisen of presenting to the trial court in advance of the trial a motion to suppress the evidence obtained by an illegal search and to return the property to defendant. It would seem that such a procedure is still only a collateral issue, even though tried in advance of the trial on the merits. Our Pomeroy and Sharpless cases were decided before adroit counsel discovered the value of a motion to suppress the evidence.

The rule is well laid down in Commonwealth v. Dana, 2 Metc. (Mass.) 329. In the Pomeroy Case, supra, Judge SHERWOOD quoted from the Dana Case, as follows:

"Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question."

Judge SHERWOOD further quoted from Mr. Justice BAKER in Gindrat's Case, 138 Ill. 103, as follows:

"Courts, in the administration of the criminal law, are not accustomed to be oversensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right."

State v. Sharpless, supra, merely followed and reannounced the rule laid down in the Pomeroy Case. The

case of Commonwealth v. Dana, supra, is probably the
leading case in the United States on the question of the
admissibility of evidence, no matter how obtained. The
Massachusetts courts have consistently followed it. On
January 9, 1923, the Supreme Judicial Court of that
state handed down an opinion in Commonwealth v. Wil-
kins, 138 N. E. (Mass.) 11, in which the Dana Case is
followed and approved, notwithstanding the evidence was
admittedly procured by illegal search and seizure and
timely motion for the return of the liquor had been filed
and overruled.

It would seem that some of the cases have gone too
far in reading constitutional provisions like our Section
11, Article II, into constitutional provisions like our Sec-
tion 23, Article II. The unsoundness of this is well illus-
trated in State v. Flynn, 36 N. H. 64, from which Judge
SHERWOOD quoted in the Pomeroy Case, as follows:

"In State v. Flynn, supra, BELL, J., speaking as the
organ of the court, said: 'It seems to us an unfounded
idea that the discoveries made by the officers and their
assistants, in the execution of process, whether legal
or illegal, or where they intrude upon a man's privacy
without any legal warrant, are of the nature of admis-
sions made under duress, or that it is evidence furnished
by the party himself upon compulsion. The informa-
tion thus acquired is not the admission of the party, nor
evidence given by him, in any sense. The party has in
his power certain mute witnesses, as they may be called,
which he endeavors to keep out of sight, so that they
may not disclose the facts which he is desirous to con-
ceal. By force or fraud access is gained to them, and
they are examined, to see what evidence they bear. That
evidence is theirs, not their owner's. If a party should
have the power to keep out of sight, or out of reach, per-
sons who can give evidence of facts he desired to sup-
press, and he attempts to do that, but is defeated by
force or cunning, the testimony given by such witnesses
is not his testimony, nor evidence which he has been
compelled to furnish against himself. It is their own.

It does not seem to us possible to establish a sound distinction between that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means. The evidence is in no sense his.' "

The late case of State v. Chuchola, 120 Atl. (Del.) 212, decided September 29, 1922, discusses this and other features of the question and expresses my own views much more ably and clearly than I can and I quote from the opinion at considerable length:

"It is difficult to see any constitutional connection between the illegal seizure and the use of the thing seized as evidence. The act the Constitution prohibits is the seizure, not the use of the article seized. The violation of the constitutional provision would seem to be complete when the seizure is made, and in that case the only remedy or redress the wronged party has is an action against the wrongdoer—the person who made the seizure. [People v. Mayen (Cal. Sup.), 205 Pac. 435, in which the leading cases, State and Federal, are ably reviewed.]

"The denial of the use in evidence of an article illegally seized might discourage, and to a great extent prevent, illegal seizures, but it does not seem to us to be a sufficient reason for excluding such evidence at the trial. If a man's property is seized without a warrant, illegally seized, the person making the seizure can be and ought to be punished for his unlawful act, but such act should not prevent the use of the thing seized in evidence, and certainly not if its possession constituted the crime charged.

"It is argued that if every article, the possession of which is made unlawful by statute, is admissible in evidence although illegally seized, the Legislature can nullify to a great extent the constitutional guaranty. The same argument was formerly unsuccessfully made in many cases against seizures with a warrant and searches without a warrant after legal arrest. But the

courts have generally held that such seizures were not unreasonable and that such searches were not illegal. And we think that if articles illegally seized belong to the *corpus delicti* their use in evidence is not a violation of any constitutional provision.

"But the Supreme Court has said in the Weeks Case, and in several others, that property illegally seized cannot be used in evidence and must be returned if restoration is seasonably asked for. That conclusion may be intelligible and reasonable if the thing taken was something the person had a right to hold. Even though a person be suspected of a crime, if his property has been taken from him illegally, it would seem that it should be returned to him in a proper proceeding, regardless of indictment or approaching trial. If it is his property and his possession is lawful it is conceivable that he has a right to its restoration. But it does seem to us that, if the article illegally seized was something in which the suspect could have no right of property, its possession was unlawful, and it constituted in fact, as was said in the case of Com. v. Dana, supra, the *corpus delicti*, it should not be returned or destroyed.

"In the present case the defendant has made a motion, for the return or destruction of the liquor taken without a warrant, so that it may not be used as evidence against him at his trial. He does not expect its return, for possession would be unlawful. Such motion, therefore, indicates that the defendant has no right to the liquor, and that he cannot lawfully have it in his possession. What right then has he to ask for its destruction? The only answer is, that the liquor was unlawfully taken from him, and should be destroyed. This seems to us to be illogical, unreasonable, and unfair to the State in its effort to punish the criminal. Upon what theory of justice or reason has any one the right to have returned to him money he has stolen, a weapon with which he has committed a murder, or intoxicating liquor he has in his possession in violation of law, no matter

by what means it was found and seized? If the liquor must be destroyed the result is that the person who made the illegal search is not punished, but the State is punished in being deprived of the use of the liquor to secure the wrongdoer's conviction. We do not believe the Constitution-makers meant to be so solicitous for the interests of a person accused of crime as to exclude from the jury, not only the evidence of his guilt, but the thing the possession of which constitutes his crime. Such an article is in theory, and ought to be in fact, whenever and however taken, forfeited by the accused, and in the custody of the law."

The opinion then discusses many of the cases, and then proceeds:

"It is argued by the defendant, and clearly stated by the court in United States v. Slusser, supra, that an unlawful search cannot be justified by what is found; that a search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. There is no doubt about the correction of that proposition. The contention of the State is that, no matter how unlawful the search and seizure may have been, if the thing seized constitutes the *corpus delicti* and is something in which the defendant had no right of property or possession, it may be used as evidence against him at his trial, and he has no right to its return or, destruction. It is in the custody of the law, and should remain there until it has answered its purpose as evidence, and is ordered to be destroyed by the court on its own motion or on the application of the State.

"Even if such contention is inconsistent with the decisions of the United States Supreme Court subsequent to the Adams Case, we are convinced that the decided majority of the State courts have approved the decision in Com. v. Dana, and in conformity therewith we hold, that the illegality of the seizure constitutes no good reason for excluding the thing seized from admission as evidence, if it is pertinent to the issue.

302 Mo. Sup.—25.

"But after a careful examination of the Federal cases, we are not convinced that the Supreme Court would hold that intoxicating liquor, the possession of which is unlawful, as in this State, seized without a warrant, must be returned or destroyed, or that its use as evidence against the defendant would be a violation of any provision of the Constitution."

The case of People v. Mayen, 205 Pac. (Cal.) 435, is squarely in point. There the seizure was illegal, and a motion for return of the seized property was filed and denied in advance of the trial. Discussing the effect of the constitutional provision that no person shall be compelled in any criminal case to be a witness against himself, Sloane, J., said:

"Section 13 of Article I of our Constitution says, as does the Fifth Amendment to the Federal Constitution, that no person 'shall . . . be compelled, in any criminal case, to be a witness against himself.' This means, as we understand it, that one charged with the commission of a crime has the right at all stages of the investigation to stand silent and inert before his accusers. If he is required to contribute by word or act to the evidence against himself, his constitutional right is invaded. Such was the situation in Boyd v. United States, supra, which is cited as authority on this point in the decision last referred to. But to apply such an interpretation to the surreptitious or forcible seizure of incriminating evidence, even from the possession of the defendant, would bar the use of all information emanating from the acts or possessions of such defendant not voluntarily furnished. In the face of such an interpretation of the Constitution, how could the law authorize the search of the person of one arrested for crime, and the use of evidence of his guilt thus secured? How could a witness who had by trespass or dissimulation witnessed, or overheard incriminating acts or statements of the accused be permitted to testify? How could articles used in commission of a crime be taken from

State v. Owens.

the premises of the defendant by authority of a search warrant to be used in evidence, as is permitted by Section 1524 of our Penal Code? In each instance suggested the incriminating facts would be involuntarily forced from the possession of the accused.''

It was also held in People v. Mayen, supra, that the correctness of the court's ruling on motion to return property illegally seized could not be reviewed on appeal from the judgment in the criminal case. On this point, Judge SLOANE said:

''It may in this connection be noted that the decisions of our own court and of every other jurisdiction are in entire accord with the Supreme Court of the United States in holding that the seizure by officers of the law of private papers and effects by unlawful and unauthorized entry and search, to be used as evidence in criminal prosecutions of the persons from whom taken, is a violation of the constitutional right to security against unreasonable searches and seizures; and that such constitutional guaranty is one which should be zealously enforced in behalf of every citizen. But no authority, so far as we have been able to discover, has suggested that the subsequent use of articles so taken as evidence is in itself any part of the unlawful invasion of such constitutional guaranty. The search and seizure are complete when the goods are taken and removed from the premises. Whether the trespasser converts them to his own use, destroys them, or uses them as evidence, or voluntarily returns them to the possession of the owner, he has already completed the offense against the Constitution when he makes the search and seizure, and it is this invasion of the rights of privacy and the sacredness of a man's domicile with which the Constitution is concerned.

''The Constitution and the laws of the land are not solicitous to aid persons charged with crime in their efforts to conceal or sequester evidence of their iniquity. From the necessities of the case the law countenances

many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon. deceiving. and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transom light. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment.

"Thus it is that almost from time immemorial courts engaged in the trial of a criminal prosecution have accepted competent and relevant evidence without question, and have refused to collaterally investigate the source or manner of its procurement, leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the possession of goods wrongfully taken."

In the recent case of Welchek v. State, 247 S. W. (Tex.) 524, decided January 17, 1923, reasoning that seems to me to be entirely sound is used. The liquor held admissible in evidence was taken from defendant after arrest, but the court makes no distinction on that ground. In disposing of the case, LATTIMORE, J., said:

"The detection of crime and the punishment of criminals and the consequent preservation of the lives, liberty, peace, and property of the law-abiding part of organized society is one of the most important functions of government, and it not infrequently happens that in the pursuit of this function the rights of the individual citizen must endure for a season when there is an apparent conflict between them and the rights of the general public. One whose property is stolen or whose home is burglarized or whose property in other ways which might be instanced becomes necessarily a link in a chain of evidence might find himself forced to leave such property in the custody of the courts till the rights of the general public to have present all testimony to develop a criminal case have been observed, unless he can satisfy the authorities that he would produce such

property in court when its presence became necessary. It is not believed that any court upon motion or petition would deliver to an alleged criminal or those interested in its removal or destruction personal property whose presence is deemed necessary to the development of a criminal case. It is no argument against such right of the courts to retain the custody of such property that the home of the owner was entered without his consent, or the property was violently taken from his person or possession. Indeed, the person of a witness may, without his consent, be held in custody of the court for the sake of obtaining his testimony under circumstances which might be set forth.

"In our judgment, however, the proper decision of the question before us rests on the fact that there is nothing in the constitutional provision inhibiting unreasonable searches and seizures which lays down any rule of evidence with respect to the evidential use of property seized under search without warrant, nor do we think anything in said constitutional provision can be properly construed as laying down such rule. It seems to us that it is going as far as the provision of said Constitution demands to admit that one whose property is wrongfully obtained in any manner is entitled to his day in some court of competent jurisdiction and to a hearing of his claim for the restoration of such property, and for the punishment of the trespasser or the announcement that the citizen may defend against such intrusion; but it must always be borne in mind, if there appear the fact that said property by its physical appearance upon the trial will aid the court in arriving at a correct conclusion in a criminal case, that the owner's right to the return thereof should be held in abeyance until said property has served the government, the whole people, by its appearance in testimony. Nor can the rejection of the proffer in testimony of such property be soundly sustained upon the theory that the officer or person who removed such property having evidential value from

the house or curtilage of its owner should be punished for an entry into said premises without search warrant. To reject such evidence for such reason or to completely return same to the owner and relinquish jurisdiction over same would in no wise be a punishment to the officer, but would rather be a hurt inflicted upon the people, whose interest in the punishment of crime suffers because the court may think the officer should be rebuked for the manner in which he obtained the evidence.

"We believe that nothing in Section 9, Art. I, of our Constitution, supra, can be invoked to prevent the use in testimony in a criminal case of physical facts found on the person or premises of one accused of crime, which are material to the issue in such case, nor to prevent oral testimony of the fact of such finding which transgresses no rule of evidence otherwise pertinent.

"Under general rules the acts and declarations, both oral and written, of one accused of crime, which shed light on the issues before the court, are competent; it being excepted that those are not admissible which are made under duress, in confinement or custody, save when coming under certain safeguards. The underlying reason for such exception does not rest upon the fact that these acts and declarations are not entitled to be heard inherently, but that experience fears that same may be induced by hope of reward, fear of punishment, etc., or that those interested in the prosecution of the prisoner may not have fairly reproduced, obtained, or presented what was said or done by him.

"But when the evidence offered is of an act, a declaration, or a writing which is not tainted by the objectionable circumstances of duress or constrained when uttered or done, or when the question is evidence of the possession by the accused of any property whose custody, ownership, or creation by him gives it weight in solving a crime, the method or manner by which such proffered testimony came before the court cannot be raised by any attempted application of said Section 9,

Article I, supra, but may only be determined by rules of evidence which are general and have become fixed in the wisdom and experience of the courts of all civilized countries. If there be sound objection to testimony otherwise material which has been found on the person or in the possession or home of the accused, such objection must rest upon some better reason than that the accused did not consent to its taking or to the entry of such premises.''

The Supreme Court of Ohio, in January, 1923, handed down an opinion in seventeen cases consolidated in one opinion. The title of the first case is Rosanski v. State. It is reported in 106 Ohio St. 442, 140 N. E. 370. The issue in those cases is thus clearly stated in the opinion:

''Only one further question remains to be discussed, viz., whether in any case where liquors have been seized, whether lawfully or unlawfully, whether by virtue of a search warrant or not, and, if by virtue of a search warrant, whether the process has been regular or not, the persons from whom such liquors have been taken have a right to demand a return of the liquors before trial, and whether the liquors can under such circumstances be admitted as evidence on the part of the State.''

The court concluded that where articles taken under unlawful search and seizure are contraband or articles in which defendant can have no lawful rights, defendant is not entitled to have such articles returned to him and they are admissible in evidence against him, notwithstanding petition for their return or motion to suppress. After discussing the numerous State and Federal cases, the opinion proceeds as follows:

''I repeat that it is unnecessary to discuss the numerous cases which agree with the views herein expressed, but it should be stated that the opinion of BAKER, J., in United States v. Snyder, 278 Fed. 650, contains an excellent discussion and the opinion of SLOANE, J., in People v. Mayen, 205 Pac. (Cal.) 435, is equally cogent.

Many constitutional and statutory safeguards have been provided to insure that persons accused of crime shall have a fair and impartial trial, and these safeguards apply to matters of form as well as substance; but neither the laws nor the courts are solicitous to aid persons accused of crime in concealing the evidence of their guilt. Many presumptions are indulged in favor of accused persons, and a strong measure of proof is required as to every material fact necessary to establish the guilt of the accused. But such indulgencies do not reach to the extent of rejecting competent evidence because of the method by which it was procured. In the case of People v. Mayen, supra, the court made the following observation upon this subject: 'From the necessities of the case the law countenances many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon deceiving and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transom light. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment. Thus it is that almost from time immemorial courts engaged in the trial of a criminal process have accepted competent and relevant evidence without question, and have refused to collaterally investigate the source or manner of its procurement, leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the possession of goods wrongfully taken.'

"In those cases holding to the opposite view, it is urged that to use the evidence would be tantamount to compelling the accused to be a witness against himself, thereby violating the 5th Federal Amendment. That amendment has no relation to state criminal procedure, but the same provision is found in Section 10 of the Ohio Bill of Rights, and the proposition therefore challenges our attention. Whatever might be said of using

evidence which the accused is entitled to again have lawfully in his possession, the principle can have no application to those cases where the possession constitutes the offense. The accused could only be the unwilling source of the evidence if the contraband property had been placed in his possession against his will. If he is willing to possess liquor he must be said to be the willing source of the evidence. He is only the unwilling source of the evidence if unwilling to possess the goods, but in this event, he cannot be guilty at all.

"All that has been said on this latter question can have no relation to liquors carefully possessed in the home, and if liquor should be taken from a bona-fide dwelling, without process, or by unlawful process, such goods should be returned to the accused before the trial. But in those cases where there is a failure to show lawful possession the liquor may lawfully be admitted in evidence on the part of the State.

"There has been a great deal of misguided sentiment foisted upon a patient people during these latter days about the constitutional rights and privileges of the criminal classes. If all the doctrines which are being urged by attorneys representing liquor-law violators should be adopted by the courts as the true interpretation of our sacred Bill of Rights, it would no longer be recognized as a charter of government and as a guarantee of protection of the weak against the aggressions of the strong, but rather as a charter of unbridled license and a certificate of character to the criminal classes."

Numerous other cases supporting more or less strongly the same view might be cited. I have quoted from a few of the best reasoned cases. Professor John H. Wigmore has written a most exhaustive discussion of the subject for the American Bar Association Journal, which article is entitled, "Using Evidence Obtained by Illegal Search and Seizure." The same is found in the August, 1922, issue at page 479, and is well worth care-

ful study. See also an article in the December, 1923, issue of American Bar Association Journal, page 773, by the late Senator Knute Nelson. The article is entitled, "Search and Seizure: Boyd v. United States."

Since this case reached Court en Banc, the learned Attorney-General has filed a brief in which he has cited the leading case in each of the states which have passed upon this vexed question. They are cited in the order of the states. He says the list is substantially correct up to the Reporter publications of the week of January 14, 1924. I will not undertake to verify these citations or to discuss the cases cited or recite what they decide. They show that the weight of authority in the State courts is against the rule announced in the majority opinion. The labor involved in preparing such a list should not be entirely lost and, for the benefit of the interested reader, I herewith set out the cases he has cited, with the years such cases were decided:

Alabama—Banks v. State, 207 Ala. 179, 93 So. 293, 24 A. L. R. 1359 (1921);

Arizona—Argetakis v. State, 212 Pac. 372 (1923);

Arkansas—Benson v. State, 149 Ark. 633, 233 S. W. 758 (1921);

California—People v. Mayen, 188 Cal. 237, 205 Pac. 435, 24 A. L. R. 1383 (1922);

Colorado—Pasch v. People, 72 Colo. 92, 209 Pac. 639 (1922);

Connecticut—State v. Magnano, 97 Conn. 543, 117 Atl. 550 (1922);

Delaware—State v. Chuchola, 120 Atl. 212 (1923);

Georgia—Calhoun v. State, 144 Ga. 679, 87 S. E. 893 (1915); Kennemer v. State, 154 Ga. 139, 113 S. E. 551 (1922);

Idaho—State v. Anderson, 31 Ida. 514, 174 Pac. 124 (1918); State v. Myers, 36 Ida. 396, 211 Pac. 440 (1922);

Illinois—Gindrat v. People, 138 Ill. 103, 27 N. E. 1085 (1891); People v. Paisley, 288 Ill. 310, 123 N. E. 573 (1919);

Indiana—Callender v. State, 138 N. E. 817 (1922);
Indiana—Flum v. State, 141 N. E. 353 (1923);
Iowa—State v. Tonn, 195 Iowa, 94, 191 N. W. 530 (1923);
Kansas—State v. Miller, 63 Kan. 62, 64 Pac. 1033 (1901); State v. Van Wormer, 103 Kan. 309, 173 Pac. 1076 (1918);
Kentucky—Youman v. Com., 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303 (1920);
Louisiana—State v. Creel, 94 So. 433 (1922);
Maine—State v. Plunkett, 64 Me. 534 (1874);
Maryland—Lawrence v. State, 103 Md. 17, 63 Atl. 96 (1906);
Massachusetts—Com. v. Dana, 2 Metc. (43 Mass.) 329 (1841); Com. v. Wilkins, 138 N. E. 11 (1923);
Michigan—People v. Marxhausen, 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505 (1919); People v. Case, 220 Mich. 379, 190 N. W. 289 (1922);
Minnesota—State v. Hesse, 191 N. W. 267 (1921); State v. Pluth, 195 N. W. 789 (1923);
Mississippi—Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377 (1922);
Montana—State ex rel. District Court, 59 Mont. 600, 198 Pac. 362 (1921).
Nebraska—Billings v. State, 191 N. W. 721 (1923); Georgis v. State, 193 N. W. 713 (1923);
New Hampshire—State v. Flynn, 36 N. H. 64 (1858); State v. Agalos, 107 Atl. 314 (1919);
New Jersey—State v. McQueen, 69 N. J. L. 522, 55 Atl. 1006 (1903); State v. Lyons, 122 Atl. 758 (1923);
New Mexico—State v. Barela, 23 N. M. 395, 168 Pac. 545, L. R. A. 1918-B, 844 (1917);
New York—People v. Adams, 176 N. Y. 351, 68 N. E. 636, 98 A. S. R. 675, 63 L. R. A. 406 (1903); People v. Esposito, 194 N. Y. S. 326, 118 Misc. 867 (1922);
North Carolina—State v. Wallace, 162 N. C. 622, 78 S. E. 1, Ann. Cas. 1915B, 423 (1913); State v. Simmons, 183 N. C. 684, 110 S. E. 591 (1922);

North Dakota—State v. Pauley, 192 N. W. 91 (1922);

Ohio—Ciano v. State, 105 Ohio St. 229, 137 N. E. 11 (1922); Rosanski v. State, 106 Ohio St. 442, 140 N. E. 370 (1922);

Oklahoma—Gore v. State, 218 Pac. 545 (1923);

Oregon—State v. Laundy, 103 Ore. 443, 204 Pac. 958 (1922);

South Carolina—State v. Prescott, 117 S. E. 637 (1923);

South Dakota—State v. Madison, 23 S. D. 584, 122 N. W. 647 (1909); City of Sioux Falls v. Walser, 45 S. D. 417, 187 N. W. 821 (1923);

Tennessee—Hughes v. State, 145 Tenn. 544, 238 S. W. 588 (1922);

Texas—Welchek v. State, 93 Tex. Cr. App. 271, 247 S. W. 524 (1923); Bell v. State, 94 Tex. Cr. App. 266, 250 S. W. 177 (1923);

Utah—State v. Aime, 220 Pac. 704 (1923);

Vermont—State v. Suiter, 78 Vt. 391, 63 Atl. 182 (1905);

Virginia—Lucchesi v. Com., 122 Va. 872, 94 S. E. 925 (1918);

Washington—State v. Gibbons, 118 Wash. 171, 203 Pac. 390 (1922); State v. Dersiy, 121 Wash. 455, 215 Pac. 34 (1922); State v. Basil, 217 Pac. 720 (1923);

West Virginia—State v. Wills, 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398 (1922); State v. Pridemore, 116 S. E. 756 (1923);

Wisconsin—Hoyer v. State, 193 N. W. 89 (1923).

Wyoming—State v. Peterson, 27 Wyo. 185, 194 Pac. 342 (1920).

I also quote the recapitulation of the Attorney-General, without assuming responsibility for its accuracy, as follows:

"Authorities in point were not found in Florida, Rhode Island, Pennsylvania and Nevada. Missouri is omitted for obvious reasons. Of the other forty-three

states, the foregoing table shows that twenty-six of them in cases necessarily determining the point have held that the means by which evidence is obtained does not affect its admissibility, if otherwise relevant; and five other states have announced the same rule in substantial *obiter*.  Ten states where the question was squarely before them announced adherence to their interpretation of the Federal rule and two others in substantial *obiter* hold likewise.  Of the thirty-one states announcing the view contended for by the Attorney-General herein, seventeen of them passed upon the question in cases where it was raised in a preliminary motion or proceeding before the trial, and in the remaining fourteen, it arose upon objection to the evidence.  In the twelve states purporting to follow the Federal rule, seven of them passed upon the question where raised by preliminary pleading of some kind, and .the other five upon objection to the evidence only."

In the majority opinion Judge WHITE cited and ably discussed the cases which he holds establish the conclusion that the liquor taken from defendant should not have been admitted in evidence in the case at bar. He has also sought to distinguish cases which reached a different conclusion.  It is difficult to make such distinction and leave the Federal rule intact.

My own views are that there is no necessary constitutional connection between Sections 11 and 23, Article II, of our Constitution and the fact that articles have been seized in violation of Section 11 does not make their admission in evidence a violation of Section 23.  I am unable to comprehend how the use of evidence *obtained under a legal search warrant* does not violate our constitutional provision "that no person shall be compelled to testify against himself in a criminal cause" just as much as the use of evidence *obtained by an unlawful search and seizure* violates said provision.  If the introduction in evidence of articles *unlawfully* seized is compelling a defendant to testify against himself, then just

as truly the introduction in evidence of articles *lawfully* seized is compelling a defendant to testify against himself. The distinction is utterly unsound. The attempt to draw such distinction necessarily leads to and has resulted in hopeless confusion in the decided cases. The State courts adopting the rule announced by the majority have yielded reluctantly to the apparent rule of the Boyd Case and have contrived all manner of expedients to avoid its supposed effect, such as contraband exception, use of such testimony when obtained by others than officers, discovery when arrest was for some other misdemeanor or when arrest was upon suspicion of felony and necessity, as in case of search of an automobile.

I think the Ohio case and other cases cited and quoted from are entirely right in holding that a defendant can have no property rights in contraband articles, such as intoxicating liquor, the possession of which is denounced as a crime, and that such defendant is not entitled to have such articles returned to him upon motion, even when admittedly taken from him in violation of Section 11, but I do not think such decisions go to the very heart of the matter. Section 23 has no necessary or logical constitutional connection with Section 11. Articles unlawfully seized may properly be introduced in evidence without violating the provisions of Section 23. If defendant has secured their return before trial because of some lawful property right therein, there is nothing in Section 23 forbidding witnesses to testify at the trial concerning the finding and character of such articles.

My notion about Section 11, Article II, is that it is a provision entirely separate and apart from Section 23, Article II. Section 11 provides for the security of the people from unreasonable searches and seizures. It is not a rule of evidence, and does not purport to be. Its aim is to prevent invasion of the privacy of the citizen and to protect his property rights and the sanctuary of his home. Undoubtedly the wronged citizen may maintain an action for infringement of this right. If the available remedies are not sufficiently deterrent, the Leg-

State v. Owens.

islature may make infringement of the right a criminal offense and punishable as such. It may authorize a civil suit by the injured party, as for a penalty for his use and benefit, without reference to the actual damages suffered. Because the Legislature has not seen fit to enact such legislation, is no reason why the courts should take Section 11 and read it bodily into Section 23. It will not do to make the violation of this right the basis of a second wrong, to-wit, the injury done the whole people by excluding the evidence thereby obtained and thus permitting violators of the criminal statutes to go "unwhipped of justice."

If evidence can thus be excluded in a prosecution for violation of the Prohibition Law, it will necessarily have to be excluded in all cases, where such evidence has been procured under similar circumstances. The murderer may go free where the sole and conclusive evidence of his guilt is found upon his person or in his home by zealous officials through too hasty or too eager action before a search warrant can be procured. "Suspicion of felony," an exception upon which some of the cases ride off, might not be sufficient protection in all cases. Damning proof of murder or other grave felony has frequently been discovered in the pursuit of one under suspicion for misdemeanor merely. The rule announced in the majority opinion is one fraught with the possibility of serious consequences and capable of far-reaching results. It may be used to cripple most disastrously speedy and effective prosecution of crime.

For the reasons set forth, I respectfully dissent from the conclusion reached in the majority opinion. *Walker, J.,* concurs herein.

Headnotes 1 and 2: Criminal Law, 16 C. J. sec. 1110, and Intoxicating Liquors, 33 C. J. secs. 368, 487; Headnotes 3, 4, 5, 6, 11 and 12: Searches and Seizures, 35 Cyc. 1269, 1273, 1272 (1926 Anno), and Courts, 15 C. J. sec. 317; Headnotes 7 and 9: Intoxicating Liquors, 33 C. J. secs. 397 (1926 Anno), 383 (1926 Anno); Headnotes 10 and 13: Constitutional Law, 12 C. J. secs. 109, 445 (1926 Anno).